IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, <br>    Plaintiffs, <br><br> v. <br><br> INGENERO, INC., <br>    Defendant. | § § § § § § § § § § § | CIVIL ACTION NO. _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

1. Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") petition this Court pursuant to the Declaratory Judgments Act, 28 U.S.C. Section 2201, Texas Civil Practice and Remedies Code Section 37.001, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, for a declaratory judgment regarding the construction of certain insurance policies and the parties' rights and obligations thereunder with respect to underlying lawsuits pending against defendant Ingenero, Inc. ("Ingenero").

**I.**
**BASIS FOR THE COMPLAINT**

2. Ingenero is a defendant in numerous underlying lawsuits pending in multi-district litigation ("MDL") arising out of explosions at a butadiene production plant owned and operated by TPC Group, Inc. and/or TPC Group, LLC (collectively "TPC") in Port Neches, Texas. According to the operative MDL petition, Ingenero was hired "to provide engineering services and partner with TPC to oversee the butadiene production at TPC's Port Neches plant."

3. Plaintiffs issued to Ingenero certain nonprofessional-liability insurance policies, which provide no coverage for the claims asserted against it by such petition in the MDL lawsuits.

4. Accordingly, Plaintiffs seek a judgment declaring that, under their respective insurance policies, they have no duty to defend or, as such, to indemnify Ingenero in the MDL lawsuits.

## II.
### THE PARTIES

5. Ohio Security is a New Hampshire insurer authorized to do business in Texas and with its principal place of business in Massachusetts.

6. Ohio Casualty is a New Hampshire insurer authorized to do business in Texas and with its principal place of business in Massachusetts.

7. Ingenero is a Delaware corporation with its principal place of business in Texas. Ingenero can be served through its registered agent for service, James G. Brigman, at 440 Louisiana Street, Suite 625, Houston, Texas 77002.

## III.
### JURISDICTION

8. The amount in controversy exceeds $75,000, exclusive of interest and costs. The parties to this lawsuit are of different states: Plaintiffs are citizens of New Hampshire and Massachusetts, and defendant is a citizen of Texas. Therefore, this Court has jurisdiction over the lawsuit under 28 U.S.C. Section 1332.

## IV.
### VENUE

9. Venue is proper in the Eastern District of Texas, Beaumont Division, pursuant to 28 U.S.C. Section 1391 (b)(2) because the underlying MDL giving rise to this coverage dispute is pending in Orange County, Texas, where the losses occurred.

## V.
## BACKGROUND

### A. The Underlying Claims

10. On November 27, 2019, there occurred at TPC's butadiene production plant in Port Neches at least two explosions allegedly caused by an active popcorn polymer infection in the plant's butadiene finishing section. Thousands of third-party claimants have filed suit against TPC and Ingenero asserting claims (the "Underlying Claims") for damages for bodily injury, property damage and/or other harm allegedly caused by the explosions, which also allegedly resulted in the release of and exposure to dangerous chemicals and substances, including 1,3-butadiene and benzene.

11. The Underlying Claims have been consolidated into an MDL; i.e., Cause No. A2020-0236-MDL, styled *In Re: TPC Group Litigation* and pending in the 128th Judicial District Court of Orange County, Texas. As of the date of filing of this action, the live petition in such MDL is the Fifth Amended Master Consolidated Petition, a copy of which is attached as **Exhibit A** (the "Petition").

12. As respects Ingenero, the Petition alleges liability arising from its performance of and/or failure to perform professional services for TPC at the plant. Specifically, the Petition sets forth against Ingenero alone Count XI, which alleges as follows:

> 176. During the relevant time period set forth herein, TPC hired Ingenero to provide engineering services and partner with them to oversee the butadiene production at the Port Neches plant. Ingenero agreed to make its own observations and recommendations concerning the plant's process operations and chemistry. In its work, Ingenero reviewed daily operator logs, process operations, and process chemistry data.
>
> 177. Based upon its review and exercising its engineering judgement, Ingenero reported its daily observations and made recommendations it determined necessary for the safe and efficient operation of TPC's Port Neches plant. Like NALCO, Ingenero knew, or should have known, that the finishing section of TPC's Port Neches facility, including the S4D4 A&B towers, was so badly infected with active

popcorn seeds that the only way to ensure the towers could continue to perform safely was to *shut them down,* clean them out, and passivate them.  Instead of recommending to TPC that the S4D4 A&B towers be immediately shutdown, cleaned, and passivated, however, Ingenero continued to provide and charge TPC for engineering services it knew or should have known would be ineffective.

178.    While Ingenero knew, or should have known, that there was an active popcorn polymer infection in the TPC plant's butadiene finishing section at that time, Ingenero also knew, or should have known, that TPC did not understand or appreciate this fact.  Instead of informing TPC of the active popcorn infection and recommending an immediate shutdown, Ingenero allowed TPC to make decisions based on inaccurate and/or incomplete information.  Ingenero knew, or should have known, TPC was relying on Ingenero to make sure TPC had accurate knowledge regarding its plant's process operations and chemistry.

179.    At all relevant times, Ingenero was under a duty to utilize reasonable care in the work done at TPC's Port Neches plant.

180.    Ingenero's plant obligations and conduct obligated it to protect Plaintiffs, who were within the appreciable zone of risk created by Ingenero's activities and would foreseeably be exposed to harm due to those risks.

181.    Ingenero was under a duty of care to refrain from negligent conduct that would cause popcorn polymer issues and/or explosions and emissions resulting in injuries, damages, contamination, and/or pollution of the nearby residents, their property, and others including, but not limited to, Plaintiffs.

182.    Ingenero was under a duty to exercise reasonable care while conducting its work at TPC's Port Neches plant, including, *inter alia,* its work/personnel/ equipment/procedures/protocols/maintenance/testing/consulting/advice related to the plant.

183.    Ingenero knew, or should have known, that the acts and omissions described herein could result in damage to Plaintiffs, Plaintiffs' children, Plaintiffs' property, nearby residents' health and property, businesses, the land, the water, the environment, and others.

184.    Ingenero failed to exercise reasonable care while conducting its TPC Port Neches plant operations, thereby breaching the duties it owed to Plaintiffs and others in the community, including the failure to vet, train, screen, supervise and/or staff to adequately handle and/or monitor the popcorn polymer and other issues at the Port Neches plant.  Ingenero's negligence was the direct and/or proximate cause of the explosions and releases at TPC's Port Neches facility on November 27, 2019.

185.    Ingenero also failed to provide adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions, thereby further breaching the duties it owed to Plaintiffs and others in the community.

186. Ingenero further failed to perform its undertaking as a reasonably prudent chemical engineer and/or vendor would perform services as demonstrated by the aforementioned, and other, failures.

187. Ingenero's negligence was committed by employees and agents of Ingenero and resulted in a hazardous condition(s) that directly and/or proximately Plaintiffs' injuries, damages, and harm.

188. Plaintiffs' injuries and damages resulted from Defendant Ingenero's gross negligence, which entitles Plaintiffs to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE §41.003(a).

189. Ingenero owed and breached duties of ordinary and reasonable care to Plaintiffs and others in the community in connection with the maintenance of, consultation, advice upon, and operation of the TPC Port Neches plant, and additionally owed and breached duties to Plaintiffs and others to guard against and/or prevent the risk of the explosion.

190. Ingenero also breached its legal duty to Plaintiffs and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent maintenance and/or operation and/or consulting and/or advice related to the TPC Port Neches plant.

191. Ingenero knew, or should have known, that its above-described wanton, willful, and reckless misconduct, and failure to exercise reasonable care would result in a disastrous explosion (or two) and significant environmental, health, and property damage.

192. Ingenero acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs. NALCO's, Ingenero's, Owners' and Sawgrass Holdings GP's liability is several and independent from that of TPC. Stated differently, NALCO, Ingenero, Owners, and Sawgrass Holdings GP would be liable for Plaintiffs' damages separate and apart from the conduct of TPC, as they were a proximate cause of the explosions and releases and there can be more than one proximate cause of the same.

193. By its above-described wrongful actions, inaction, omissions, and the resulting TPC plant explosions, fires, toxic emissions, and concussive shock waves, and their aftermath that extended far beyond plant premises and invaded Plaintiffs' properties, Ingenero directly and/or proximately caused Plaintiffs to suffer (and continue to suffer) the above-described injury, harm and damages to their property, businesses, and themselves. Ingenero's above-described wrongful actions, inaction, omissions, and the resulting TPC plant explosions, fires, toxic emissions, and concussive shock waves, and their aftermath constitute negligence and/or gross negligence at Texas common law–for which Plaintiffs are entitled to compensation and exemplary damages in an amount to be determined by the trier of fact.

Ex. A.  A footnote to Count XI adds that "[t]he Certificate of Merit of Victor Edwards, P.E. dated April 22, 2021 is attached hereto as Ex. l and incorporated by reference herein as if fully set forth

herein" and that "Plaintiffs rely on this in support of their claims against INGENERO as required by TEX. CIV. PRAC. & REM CODE §150.002." *Id.*

13. As against Ingenero as well as certain other defendants, in turn, the Petition sets forth Count XII, which alleges as follows:

> 195. Defendants gave misleading information about the TPC plant explosions and their aftermath to Plaintiffs and the general public and/or withheld material information about the TPC plant explosions and their aftermath from Plaintiffs and the general public and failed to exercise reasonable care when doing so. Plaintiffs justifiably and detrimentally relied on the information provided by Defendants and/or Defendants' silence when they had a duty to speak.
>
> 196. Defendants also failed to warn Plaintiffs and the general public of a developing danger known to Defendants yet concealed from the public and authorities, including, without limitation, the growing popcorn polymer within the TPC plant that created a significant risk of explosion and release of toxic chemicals and the continued release of toxic chemicals into the community without adequate warning to the community.
>
> 197. Defendants' above-referenced wrongful actions, inaction, omissions, misleading statements, and/or silence when they had a duty to speak constitute negligent misrepresentation at Texas common law-for which Plaintiffs are entitled to compensation.

*Id.*

14. Travelers Casualty and Surety Company of America ("Travelers") previously issued to Ingenero Bermuda c/o Ingenero an insurance policy providing various claims-made liability coverages, including miscellaneous professional liability coverage (the "Travelers Policy"). Travelers has acknowledged that, subject to a self-insured retention, the Travelers Policy provides coverage to Ingenero for the Underlying Claims. The Travelers Policy underlies an excess policy issued by Continental Casualty Company.

**B.     The Plaintiffs' Insurance Policies**

1.     <u>The Ohio Security Policy</u>

15.     Ohio Security issued to Ingenero a Businessowners Policy, number BZS (20) 58 58 69 10 with a policy period of March 1, 2019 to March 1, 2020 (the "Ohio Security Policy").  A copy of the Ohio Security Policy is attached as **Exhibit B**.

16.     Through Section II of its coverage form, the Ohio Security Policy provides Business Liability Coverage.  The insuring agreement therefor states in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

Ex. B.  Section II of the Ohio Security Policy coverage form also includes a set of exclusions applicable to Business Liability Coverage.  As amended by endorsement, the Professional Services Exclusion therein, exclusion **j.**, provides in part:

> This insurance does not apply to . . . [:]
>
> **j.     Professional Services**
>
> "Bodily injury," "property damage" or "personal and advertising injury" "caused by the rendering or failure to render *any professional service*.  This includes but is not limited to . . . [:]
>
> **(2)**     Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
> **(3)**     Supervisory, inspection or engineering services . . . .
>
> **(12)**     Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury"

> or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

*Id.* (emphasis added).

### 2.  The Ohio Casualty Policy

17.  Ohio Casualty, in turn, issued to Ingenero a Commercial Umbrella Policy, number USO (20) 58 58 69 10 also with a policy period of March 1, 2019 to March 1, 2020 (the "Ohio Casualty Policy").  A copy of the Ohio Casualty Policy is attached as **Exhibit C**.

18.  As amended by endorsement, the Ohio Casualty Policy coverage form includes an insuring agreement providing in part:

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

Ex. C.

19.  In its coverage form and in endorsements, the Ohio Casualty Policy also includes various exclusions.  Its "**PROFESSIONAL SERVICES EXCLUSION**" endorsement provides in part:

> This insurance does not apply to:
>
> > "Bodily injury", "property damage", "personal injury", "advertising injury" or "personal and advertising injury" caused by the rendering or failure to render *any professional service*.  This includes but is not limited to . . . [:]
> >
> > **(2)**  Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; [and]
> >
> > **(3)**  Supervisory, inspection or engineering services . . . .
> >
> > This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence",

> "offense" or other act, error or omission involved the rendering of or failure to render *any provisional service*.

*Id.* (emphasis added).

20. The Ohio Casualty Policy's "**ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILTIY EXCLUSION**" endorsement, in turn, provides in part:

> This insurance does not apply to:
>
> > Any liability arising out of the rendering of or failure to render *any professional services* by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
> >
> > Professional services include:
> >
> > **1.** the preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
> >
> > **2.** supervisory, inspection, architectural or engineering activities.
> >
> > This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render *any professional services* by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

*Id.* (emphasis added).

### C. The Coverage Dispute

21. In view of the allegations of the Petition, the Professional Services Exclusion in the Ohio Security Policy eliminates any coverage thereunder for Ingenero in the MDL. Accordingly, Ohio Security disputes that the Ohio Security Policy provides any insurance coverage to Ingenero for the Underlying Claims. On information and belief, Ingenero disagrees.

22. In view of the allegations of the Petition, the Professional Services Exclusion and Engineers, Architects or Surveyors Professional Liability Exclusion in the Ohio Casualty Policy likewise eliminate any coverage thereunder for Ingenero in the MDL. Accordingly, Ohio Casualty

disputes that the Ohio Casualty Policy provides any insurance coverage to Ingenero for the Underlying Claims. On information and belief, Ingenero disagrees.

## VI.
## DECLARATORY RELIEF

23. Plaintiffs seek declaratory judgments regarding their alleged obligations under their respective insurance policies. Specifically, Ohio Security seeks a judgment declaring that, in view of the professional services exclusion in the Ohio Security Policy, it has no duty to defend or, as such, to indemnify Ingenero in the MDL; similarly, Ohio Casualty seeks a judgment declaring that, in view of the Professional Services Exclusion and Engineers, Architects or Surveyors Professional Liability Exclusion in the Ohio Casualty Policy, it also has no duty to defend or, as such, to indemnify Ingenero in the MDL.

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, plaintiffs respectfully request a judgment:

(1) declaring that plaintiffs have no duty to defend Ingenero in the MDL;

(2) declaring that plaintiffs have no duty to indemnify Ingenero in the MDL; and

(3) granting such other and further relief to which the plaintiffs may be entitled.

Respectfully submitted,



Ellen Van Meir
State Bar No. 00794164
evanmeir@nicolaidesllp.com
Mariah B. Quiroz
State Bar No. 24031714
mquiroz@nicolaidesllp.com

NICOLAIDES FINK THORPE
    MICHAELIDES SULLIVAN, LLP
2501 North Harwood Street, Suite 1210
Dallas, TX 75201
(469) 290-9040
(469) 290-9041 - FAX

**COUNSEL FOR PLAINTIFFS**