IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, <br> Plaintiffs, <br> v. <br> INGENERO, INC., <br> Defendant. | § § § § § § § § § § | CIVIL ACTION NO. 1:22-CV-0177-MJT |

**PLAINTIFFS OHIO SECURITY INSURANCE COMPANY AND THE OHIO CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") bring this Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, showing the following reasons why they are entitled to a judgment declaring that, as a matter of law, their respective insurance policies afford no coverage to defendant Ingenero, Inc. ("Ingenero") for the claims against it in the underlying lawsuits.

**I.
STATEMENT OF UNDISPUTED MATERIAL FACTS**

**A.   Ingenero's Insurance Policies**

Ingenero is an engineering firm. *See* Ex. A at APP 007; Ex. B at APP 209; Ex. C at APP 259. As of November 27, 2019, Ingenero thus maintained professional liability insurance policies issued by Travelers Casualty and Surety Company of America ("Travelers") and Continental Casualty Company ("CNA"). *See* Ex. D at APP 342; Ex. F at APP 362. Ingenero also then maintained insurance policies for its general, non-professional liability, including Ohio Security Businessowners Policy number BZS (20) 58 58 69 10 (the "Ohio Security Policy") and Ohio Casualty Commercial Umbrella Policy number USO (20) 58 58 69 10 (the "Ohio Casualty

Policy"). *See* Ex. A at APP 001-195 and Ex. B APP 196-262. Importantly, and as discussed below, the Ohio Security Policy and the Ohio Casualty Policy both exclude coverage for any liability caused by the rendering of or failure to render any professional service, including Ingenero's engineering work. *See* Ex. A at APP 155; Ex. B at APP 246.

      **B.**      **The Underlying Loss Involving Ingenero**

TPC Group, Inc. and/or TPC Group, LLC (collectively "TPC") hired Ingenero to perform engineering work at TPC's butadiene production plant in Port Neches, Texas. Ex. C at APP 295. On November 27, 2019, at least two explosions occurred at the plant, caused by an "active popcorn polymer infection" in the plant's butadiene finishing section.[1] Ex. C at APP 302. The explosions allegedly caused "personal injuries, bodily injuries, property damage, toxic and/or chemical releases and exposures, and a litany of other injuries and damages." *Id*. Along with others, Ingenero subsequently was sued in numerous lawsuits, which were consolidated into multi-district litigation, Cause No. A2020-0236-MDL, styled *In Re: TPC Group Litigation* currently pending in the 128th Judicial District Court of Orange County, Texas (the "Underlying MDL Suit"). The current version of the Master MDL Petition is the fifth amended petition ("MDL Petition"). Ex. C. at APP 263.

The fifth amended petition is replete with factual allegations describing Ingenero's engineering work for TPC allegedly leading to the explosions. *See generally* Ex. C. The MDL Petition alleges that "[d]uring the relevant time, TPC also hired . . . Ingenero to provide engineering services and partner with TPC to oversee the butadine production at TPC's Port Neches Plant[,]"for example, and that "[b]ased upon its review and exercising its engineering judgment, . . . Ingenero reported its daily observations and made recommendations it determined necessary

---

[1] Although the precise cause of the explosion is unknown, it is immaterial to the issues involved in this insurance coverage dispute.

for the safe and efficient operation of the Port Neches plant." Ex. C at APP 263. Specifically, the MDL Petition alleges that "instead of recommending to TPC that the . . . towers be immediately shut[ ]down, cleaned, and passivated, Ingenero continued to provide and charge TPC for engineering services it knew, or should have known, would be ineffective," allegedly causing the explosions. Ex. C at APP 302. A review of the MDL Petition makes clear that Ingenero is sued exclusively for its alleged negligence in performing engineering work for TPC and not for ordinary negligence outside of its engineering work. *Id*.

  **C.**  **The Insurance Coverage Dispute**

Ingenero tendered its defense of the Underlying MDL Suit to Ohio Security and Travelers. *See* Ex. E at 340, Ex. D at 344. Ohio Security initially agreed to participate in Ingenero's defense in the Underlying MDL Suit, subject to a reservation of rights. *See* Ex. E at 349. Upon information and belief, Travelers also agreed, once its policy deductible was met, to participate in that defense.

In view of the nature of the allegations of the MDL Petition, Ohio Security subsequently determined that any coverage under the Ohio Security policy was eliminated by its professional services exclusions. *See id.* Accordingly, it discontinued its participation in Ingenero's defense, which upon information and belief, continues to be provided by Travelers. Ex. D at APP 344, 348.

Ohio Security and Ohio Casualty thereafter filed this action for a declaratory judgment that they have no duty to defend or to indemnify Ingenero in the Underlying MDL Suit [Dkt. #1], and they now file this motion for summary judgment showing, as a matter of law, that they have no such duty.

**II.**
**STATEMENT OF ISSUES TO BE DECIDED BY THE COURT**

The plaintiffs are entitled to summary judgment on the following issues:

1. Ohio Security has no duty to defend Ingenero in the Underlying MDL Suit because the professional services exclusion in the Ohio Security Policy eliminates any coverage for the claims alleged in the MDL Petition;

2. Ohio Security has no duty to indemnify Ingenero in the Underlying MDL Suit because the professional services exclusion eliminates any coverage for the claims asserted against Ingenero in the Underlying MDL Suit;

3. Ohio Casualty has no duty to defend Ingenero in the Underlying MDL Suit because all primary insurance has not exhausted by payment of judgment or settlements, and the professional services exclusion and the Engineers, Architects or Surveyors Professional Liability exclusion eliminate any coverage for the claims alleged in the MDL Petition and

4. Ohio Casualty has no duty to indemnify Ingenero in the Underlying MDL Suit because the professional services exclusion and the Engineers, Architects or Surveyors Professional Liability exclusion eliminate any coverage for the claims asserted against Ingenero in the Underlying MDL Suit.

### III.
### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Summary judgment must be granted if a reasonable fact finder could not decide in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Under Texas law, the interpretation of an insurance policy is governed by the same rules used to interpret other contracts. *Performance Autoplex II, Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

The interpretation of an insurance policy is a question of law. *St. Paul Guardian Ins. Co. v. Centrum GS, Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (quoting *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *see Performance Autoplex II, Ltd.*, 322 F.3d at 852. Because the interpretation and construction of insurance policies are matters of law, they are particularly amenable to summary judgment. *Snyder Gen. Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 677 (N.D. Tex. 1996).

The plaintiffs are entitled to summary judgment because the factual evidence proves that the underlying claims and damages sought against Ingenero in the Underlying MDL Suit are not covered by the Ohio Security Policy or the Ohio Casualty Policy, and, as a matter of law, the plaintiffs thus have no duty to defend or to indemnify Ingenero.

## IV.
## SUMMARY JUDGMENT EVIDENCE

The plaintiffs rely on the following summary judgment evidence, filed as an Appendix contemporaneously with this Motion and incorporated herein by reference:

| | | |
|---|---|---|
| Exhibit A: | Ohio Security Policy No. BZS (20) 58 58 69 10, effective March 1, 2019 to March 1, 2020 issued to Ingenero, Inc.; | APP 001 - APP 195 |
| Exhibit B: | Ohio Casualty Policy No. USO (20) 58 58 69 10, effective March 1, 2019 to March 1, 2020 issued to Ingenero, Inc.; | APP 196 - APP 262 |
| Exhibit C: | Fifth Amended Master Consolidated Petition and Jury Demand; | APP 263 - APP 341 |
| Exhibit D: | Travelers coverage position letter to Ingenero dated July 8, 2021; | APP 342 - APP 348 |
| Exhibit E: | Liberty's denial letter to Ingenero dated April 29, 2022; | APP 349 - APP 361 |
| Exhibit F: | Acknowledgment letter from Continental Casualty Company dated June 15, 2021; and | APP 362 - APP 363 |

Exhibit G:     Declaration of Kathleen MacDonald.                    APP 364 - APP 366

# V.
## ARGUMENTS AND AUTHORITIES

**A.     The Factual Allegations in the MDL Petition Do Not Create a Duty to Defend**

    1.     <u>The "Eight Corners" Rule Determines a Duty to Defend</u>

Under Texas law,[2] the allegations in the pleadings and the language of the insurance policy determine an insurer's duty to defend. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). Known as the "eight corners" rule, this rule imposes a duty to defend only "when the facts alleged in the petition, if taken as true, potentially state a cause of action within the policy's coverage." *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701; *see also GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006).

In evaluating the underlying pleading to determine whether an insurer has a duty to defend, courts focus on the "petition's factual allegations showing the origin of the damages and not on the legal theories alleged." *Nat'l Union Fire Ins. Company of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Courts may not read additional allegations into the petition to manufacture coverage. *Id.* ("We will not read facts into the pleadings. Nor will we look outside the pleadings or imagine factual scenarios which might trigger coverage.") Accordingly, the MDL Petition and the plaintiffs' policies are the only evidence to be considered in determining a duty to defend. *See generally* Exhibits A through C. As explained below, no duty to defend exists because as to Ingenero the MDL Petition describes only Ingenero's negligent

---

[2]     The policies were issued to Ingenero in Texas at Ingenero's principal place of business and as part of the plaintiffs' Texas business. Ex. A at APP 017; Ex. B at APP 197. Considering these factors, Texas law applies to interpreting the plaintiffs' policies. *See* Tex. Ins. Code art. 21.42; *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996) (applying the "most significant relationship" test set forth in the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188)

provision of professional engineering services, which is expressly excluded by the policies' professional services exclusions.

        2.        <u>No Coverage Is Afforded by the Ohio Security Policy</u>

Unlike the Travelers professional liability policy, the Ohio Security Policy expressly excludes coverage for Ingenero's professional negligence. *Compare* Ex. A at APP 101 *with* Ex. D at APP 342-43. As discussed below, the factual allegations in the MDL Petition describe only Ingenero's professional negligence. *See Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 372 (5th Cir. 2008) (distinguishing between negligent professional services and general non-professional negligence). As to Ingenero, because only its engineering work is at issue in the Underlying MDL Suit, no coverage is afforded under the Ohio Security Policy as a matter of law. *See* Ex. A at APP 101; *see generally* Ex. C.

The Ohio Security Policy provides Business Liability Coverage in Section II of its coverage form. Ex. A at APP 056. The insuring agreement states in relevant part that "[w]e will pay those sums that [Ingenero] becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies. . . . However, we will have no duty to defend [Ingenero] against any 'suit' seeking damages for 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance does not apply." *Id.* While the claims asserted against Ingenero in the MDL include allegations of "bodily injury" and "property damage" as required by the Ohio Security insuring agreement, the scope of coverage under the Ohio Security Policy is limited by included exclusions. Specifically, the Ohio Security Policy contains a professional services exclusion, which states in relevant part:

    **B.**    **Exclusions**

        **1.**    **Applicable to Business Liability Coverage**

            This insurance does not apply to:

* * *

    **j.**    **Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to . . . [:]

    **(2)**    Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

    **(3)**    Supervisory, inspection or engineering services . . . .

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

Ex. A at APP 101. Although this exclusion applies broadly to all professional services, it also specifically states that engineering services such as those performed by Ingenero are outside the scope of coverage. *Id.; Utica Lloyd's of Tex. v. Sitech Eng'g Corp*., 38 S.W.3d 260, 264 (Tex. App.—Texarkana 2001, no pet.) (finding a substantially similar exclusion unambiguous and applied to engineering services to bar a duty to defend claims alleged faulty engineering work).

    Texas law is well-settled that a professional service involves specialized knowledge, education or training and is more than an ordinary task. *Atl. Lloyds Ins. Co. v. Susman Godfrey,* 982 S.W.2d 472, 478 (Tex. App.—Dallas 1998, no writ). In particular, engineering work is a professional service because it involves specialized knowledge, training and education: an engineer must obtain an engineering degree and pass certain professional licensing requirements to work as a certified professional engineer. Courts have recognized that an engineering firm such

as Ingenero engages in professional services within the meaning of a professional services exclusion when it performs engineering work. *See, e.g., Sitech Eng'g Corp*, 38 S.W.3d at 260 (Tex. App.—Texarkana 2001, no pet.) (an engineering firm engaged in "professional services" when it failed to inspect an excavation area, designed the excavation system and drew up the plans, and misrepresented its qualifications to perform those services); *see also Hartford Cas. Ins. Co. v. DP Engineering, LLC,* 827 F.3d 423 (5th Cir. 2016) (negligent engineering work was a professional service).

The underlying claims against Ingenero result entirely from its alleged failure correctly to perform engineering work, which is excluded from coverage. *See generally* Ex. C. The MDL Petition alleges that TPC hired Ingenero to "provide engineering services and partner with TPC to oversee the butadiene production at TPC's Port Neches plant." Ex. C at APP 301. Ingenero's role was as an engineering consultant and diagnostician regarding the plant operation and Ingenero was to "make its own observations and recommendations concerning the Port Neches plant's process operations and chemistry." *Id.* To perform its job, Ingenero "reviewed daily operator logs, process operations, and process chemistry data." *Id.* Based on its review of this technical data and "exercising its engineering judgment, Defendant Ingenero reported its daily observations and made recommendations it determined necessary for the safe and efficient operation of the Port Neches plant." *Id.* TPC allegedly relied on Ingenero's specialized training, knowledge and experience as an engineering firm to assist TPC in the operation of its plant, including the prevention of a catastrophic loss like the one made the basis of the Underlying MDL Suit. Ex. C at APP 301, 326-27.

According to the MDL Petition, the explosions occurred because of ongoing popcorn polymerization issues at the plant. Ex. C at APP 302, 326. Once a popcorn infection in butadiene

production becomes resistant to chemical treatment added to the process chemistry, the only way to stop the proliferation of the popcorn infection is to shut down the equipment so it can be opened, cleaned and undergo a passivation process to remove free iron and other ferrous contaminants and popcorn seeds from the equipment.  *See* Ex. C at APP 296, 299.

The MDL Petition details several failures by the defendants to control the popcorn polymer infection that allegedly led to the explosions.  For example, the owners of the facility continually delayed planned turnarounds for the plant in the months preceding the explosion, which could have cured the polymer infection.  Ex. C at APP 294, 315.  Defendant Suez WTS USA, Inc. provided chemical vendor services to TPC and allegedly failed to add the proper chemicals and in the proper amounts for the safe processing of butadiene, increasing the likelihood of the equipment failure that led to the explosions.  Ex. C at APP 295-96.  Defendant Nalco Co., LLC was responsible for developing new process chemistry and failed to recommend an immediate shutdown of the plant in light of the active popcorn polymer infection.  Ex. C at APP 299-301.

The MDL Petition alleges that like Nalco, Ingenero allegedly knew or should have known that the plant was so badly infected with active popcorn seeds that the only way to ensure safe performance of the facility was to shut it down and clean it.  Ex. C at APP 301-02.  It further alleges that Ingenero did not recommend this course of action and, instead, "continued to provide and charge TPC for engineering services it knew, or should have known, would be ineffective." *Id*.  In other words, as TPC's engineering consultant and diagnostician, Ingenero failed to predict the eventual explosions.

The MDL Petition directly alleges that TPC contracted with Ingenero to provide engineering services, which means TPC relied on Ingenero's specific training, qualification, experience and knowledge in providing those professional services.  Ex. C at APP 326.  For

example, the MDL Petition describes the following acts and omissions of Ingenero, which are all tasks particular to engineering work and cannot be performed by a lay person:

- Ingenero agreed to make its own observations and recommendations concerning the plant's process operations and chemistry. In its work, Ingenero reviewed daily operator logs, process operations, and process chemistry data. Ex. C at APP 326-27.

- Based upon its review and exercising its engineering judgement, Ingenero reported its daily observations and made recommendations for the operation of TPC's Port Neches plant. Ingenero continued to provide and charge TPC for engineering services it knew or should have known would be ineffective. *Id*.

- Ingenero further failed to perform its undertaking as a reasonably prudent chemical engineer and/or vendor would perform services as demonstrated by the aforementioned, and other, failures. Ex. C at APP 328. Ingenero also failed to provide adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions, thereby further breaching the duties it owed to Plaintiffs and others in the community. *Id*.

The MDL Petition also describes TPC's alleged reliance upon Ingenero's specialized knowledge and experience as an engineer and consultant regarding process operations and chemistry:

- Instead of informing TPC of the active popcorn infection and recommending an immediate shutdown, Ingenero allowed TPC to make decisions based on inaccurate and/or incomplete information. Ingenero knew, or should have known, TPC was relying on Ingenero to make sure TPC had accurate knowledge regarding its plant's process operations and chemistry. Ex. C at APP 327.

Moreover, Count XI references a Certificate of Merit of Victor Edwards, PE, dated April 22, 2021 and attached to the Petitions "in support of [Underlying Plaintiffs'] claims against INGENERO as required by Tex. Civ. Prac. & Rem Code §150.002." Ex. C at APP 330-31. This statute requires an affidavit or certificate of merit from a qualified professional to accompany a petition against certain professionals, such as an engineer, in a matter that "arises out of the provision of professional services by the licensed or registered professional." *See* Tex. Civ. Prac. & Rem. Code

§150.002. Accordingly, the Certificate of Merit supports the plaintiffs' claims that Ingenero engaged in professional negligence in the performance of its engineering work for TPC at the plant.

Nothing in the MDL Petition states that Ingenero is being sued for anything other than what it was hired to do, *i.e.*, perform engineering services and consultation at TPC's plant to avoid the eventual loss. Accordingly, none of the factual allegations describing Ingenero's liability give rise to a duty to defend because they are entirely excluded by the professional services exclusion.

The professional services exclusion in the Ohio Security Policy is unambiguous and means what it says: no coverage is afforded for "bodily injury" or "property damage" caused by the rendering or failure to render any professional service, including professional engineering services. Ex. A at APP 101. *See Mid-Continent Cas. Co. v. Swift Energy Co.,* 206 F.3d 487, 491 (5th Cir. 2000) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995) (in construing unambiguous policy language, a court must apply its plain and generally accepted meaning)). In comparing the factual allegations in the MDL Petition complaining of Ingenero's failure to perform engineering services to the Ohio Security Policy language, it is clear under the "eight-corners" rule that the underlying MDL claims are entirely excluded by the professional services exclusion. *Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 264 (Tex. App.—Texarkana 2001, no pet.) (finding no duty to defend because substantially similar professional services exclusion unambiguously applied to insured's engineering work); *see also Merchants Fast Motor Lines*, 939 S.W.2d at 141 (Tex.1997) ("If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.") Because of the absence of any factual allegation suggesting that anything but Ingenero's

engineering work is at issue, Ohio Security has no duty to defend Ingenero in the Underlying MDL Suit as a matter of law.

   3.   No Coverage Is Afforded by the Ohio Casualty Policy

The Ohio Casualty Policy is an umbrella policy. Ex. B at 213. As amended by the Personal and Advertising Injury – Following Form endorsement, the insuring agreement appearing in the Ohio Casualty Policy coverage form provides in part:

> **I.   COVERAGE**
>
>   **A.**   We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit"[3] that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the **INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION III. DEFENSE.**
>
>   * * *
>
> **III.   DEFENSE**
>
>   **A.**   We have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of the policy when:
>
>      **1.**   The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "insured" have been exhausted by the actual payment of "claims" for any "occurrence" or "offense" to which this policy applies; or

---

[3] "Retained limit" is the greater of "[t]he total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance [$1 million] and the applicable limits of any other insurance providing coverage to the 'insured' during the Policy Period; or the amount stated in the Declarations as Self-Insured Retention [$10,000] as a result of any one 'occurrence' not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the 'insured' during the Policy Period. *See* Ex. B at APP 214.

> 2. Damages are sought for any one "occurrence" or "offense" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "insured."

Ex. B at APP 214.

Neither of the conditions is met for Ohio Casualty to have a duty to defend. The Travelers Policy provides professional liability coverage to Ingenero for the Underlying MDL Suit on a primary basis, and thus is "other insurance," which has not exhausted. *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 78 F.3d 202, 209 (5th Cir. 1996) ("[P]rimary coverage policy limits must be exhausted before excess policies kick in"); Ex. D at 343-44. Regardless of whether the Travelers Policy provides coverage, moreover, the damages sought from Ingenero are excluded by the Ohio Casualty Policy.

The Ohio Casualty Policy contains a professional services exclusion that is substantially the same as the professional services exclusion in the Ohio Security Policy and the exclusion enforced in *Sitech Eng'g Corp*:

**PROFESSIONAL SERVICES EXCLUSION**

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL UMBRELLA COVERAGE PART
>
> The following exclusion is added to Section **IV. - EXCLUSIONS:**
>
> This insurance does not apply to:
>
> "Bodily injury", "property damage", "personal injury", "advertising injury" or "personal and advertising injury" caused by the rendering of or failure to render any professional service. This includes but is not limited to . . . [:]
>
> * * *
>
> 2. Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

      **3.**      Supervisory, inspection or engineering services . . . .

> This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render any professional service.

Ex. B at APP 246. The Ohio Casualty Policy also contains an Engineers, Architects or Surveyors Professional Liability Exclusion:

**ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

The following exclusion is added to Section **IV. - EXCLUSIONS:**

This insurance does not apply to:

Any liability arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

**1.**    the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**2.**    supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

This endorsement does not change any other provision of the policy.

Ex. B at APP 232. Both exclusions unambiguously apply to eliminate any Ohio Casualty Policy coverage for Ingenero's professional negligence, including its engineering negligence. *See CBX Res., LLC v. Ace Am. Ins. Co.*, 282 F.Supp.3d 948, 964 (W.D. Tex. 2017) (applying a similar engineers, architects or surveyors professional services exclusion to eliminate the insurer's duty to defend claims involving negligent design of a well).

As discussed above, the factual allegations in the MDL Petition describe Ingenero's engineering work performed for TPC at its plant and complain that Ingenero's negligence in performing its engineering work caused the explosions. Because the policies contain substantially the same exclusions, the same reasons eliminating any duty to defend under the Ohio Security Policy also apply to the Ohio Casualty Policy. Therefore, in addition to the fact that primary insurance under the Ohio Casualty Policy has not exhausted, the Ohio Casualty Policy does not provide a defense to Ingenero because the professional services exclusion and the Engineers, Architects or Surveyors Professional Liability Exclusion preclude coverage to Ingenero for the MDL claims.

      **C.**    **For the Same Reason They Have No Duty to Defend, the Plaintiffs Also Have No Duty to Indemnify**

The plaintiffs also do not have a duty to indemnify Ingenero in the Underlying MDL Suit; the same reasons eliminating any duty to defend also eliminate any duty to indemnify. An insurer's duty to defend is distinct and separate from its duty to indemnify. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997). The duty to defend is broader than the duty to indemnify because typically, an insurer's duty to indemnify cannot be determined until the liability litigation in the underlying case is resolved. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009). An exception exists, however, where the duty to indemnify can be resolved solely on the pleadings in the underlying suit. *See Farmers Tex. Cnty. Mut. Ins.*

*Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997).  This exception applies here because the duty to indemnify can be resolved solely by considering the damages made the basis of the factual allegations against Ingenero in the Underlying MDL Suit.

In *Griffin*, Farmers Texas County Mutual Insurance ("Farmers") filed a declaratory judgment lawsuit seeking a declaration that it had no duty to defend or indemnify its insured James Royal, III ("Royal") in a lawsuit brought by Robert Griffin ("Griffin").  *Id*. at 81-82.  In the underlying lawsuit, Griffin alleged that he was walking when hit by gunshots from a passing vehicle driven by Royal.  *Id*. at 82.  Royal asserted that, under a personal automobile liability policy, Farmers owed him a defense in the underlying lawsuit.  *Id*.

The pertinent issue considered by the Court was whether Farmers' duty to indemnify Royal was justiciable before the underlying lawsuit resolved.  The Court held that the declaratory judgment lawsuit was not premature and Farmers could obtain a declaratory judgment based solely on the underlying pleadings because the "same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id*. at 84.  Because Farmers did not have a duty to defend Royal in light of the intentional acts exclusion and the definition of "auto accident," and Farmers also relied on these exact provisions to deny a duty to indemnify, the Court found Farmers had no duty to indemnify Royal even though the underlying lawsuit was ongoing.  *Id*.

The *Griffin* exception applies here to eliminate a duty to indemnify Ingenero even though the Underlying MDL Suit has not resolved because the same reasons eliminating any duty to defend also eliminate any duty to indemnify.  *See also Colony Ins. Co. v. Custom Ag Commodities, LLC,* 272 F.Supp.3d 948, 961 (E.D. Tex. 2017) (finding no duty to defend because of breach of contract policy exclusion and definition of "personal and advertising injury" and applying *Griffin*

to find no duty to indemnify); *Simco Enters., Ltd. v. James River Ins. Co.,* 566 F.Supp.2d 555 (E.D. Tex. 2008) (finding no duty to defend because of policy exclusion and applying *Griffin* to find no duty to indemnify).

As discussed above, the professional services exclusions eliminate a duty to defend because Ingenero is sued for its negligent procurement of engineering services, which is unquestionably professional services and expressly excluded. *Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 264 (Tex. App.—Texarkana 2001, no pet.). The professional services exclusions are a complete bar to coverage, meaning that the plaintiffs do not owe Ingenero indemnity for the MDL claims for the same reasons they do not owe a duty to indemnify against the claims for Ingenero's professional engineering negligence. Therefore, under *Griffin,* the plaintiffs have no duty to indemnify Ingenero as a matter of law.

## VI. CONCLUSION

The plaintiffs are entitled to summary judgment as a matter of law because all the Underlying MDL Suit's allegations against Ingenero, an engineering firm hired to exercise its "engineering judgement" at the TPC Port Neches plant, constitute professional services, and thus fall within the Ohio Security and Ohio Casualty professional services exclusions, eliminating any duty to defend Ingenero. Moreover, Ohio Casualty has no duty to defend because all underlying insurance, including the Travelers Policy, has not exhausted. Lastly, Ohio Security and Ohio Casualty have no duty to indemnify Ingenero for the same reason there is no duty to defend—the professional services exclusions in plaintiffs' policies entirely preclude coverage for the claims in the Underlying MDL Suit.

WHEEREFORE, PREMISES CONSIDERED, plaintiffs respectfully request that this Court grant their Motion for Summary Judgment, enter judgment in their favor, enter a take-

nothing judgment in favor of defendant's counterclaims, and grant further relief to which plaintiffs are entitled.

Respectfully submitted,

*/s/ Ellen Van Meir*

Ellen Van Meir
State Bar No. 00794164
evanmeir@nicolaidesllp.com
Mariah B. Quiroz
State Bar No. 24031714
mquiroz@nicolaidesllp.com

NICOLAIDES FINK THORPE
   MICHAELIDES SULLIVAN, LLP
2501 North Harwood Street, Suite 1210
Dallas, TX 75201
(469) 290-9045
(469) 290-9041 – FAX
**COUNSEL FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

This is to certify that on January 10, 2023, a true copy of the foregoing was served via the Court's Notice of Electronic Filing (NEF) upon defendant's counsel of record, Thomas M. Gregor and Stacy W. Beasley, GREGOR│WYNNE │ARNEY, PLLC, 700 Louisiana, Suite 3950, Houston, Texas, 77002.

*/s/ Ellen Van Meir*

Ellen Van Meir
Mariah B. Quiroz