

Saint Ann Court, 2501 North Harwood Street, Suite 1210, Dallas, TX 75201

Ellen Van Meir
(469) 290-9045
evanmeir@nicolaidesllp.com

Mariah B. Quiroz
(469) 290-9044
mquiroz@nicolaidesllp.com

April 29, 2022

Mr. Thomas M. Gregor  VIA E-MAIL: tgregor@gwafirm.com
GREGOR | WYNNE | ARNEY, PLLC
TC Energy Center
700 Louisiana, Suite 3950
Houston, TX 77002

Re:   Cause No. A2020-0236-MDL; *In Re: TPC Group Litigation*; In the 128th Judicial District Court of Orange County, Texas

|  |  |
|---|---|
| First Named Insured: | Ingenero, Inc. |
| Party Seeking Coverage: | Ingenero, Inc. |
| Policy No.: | BZS (20) 58 58 69 10 |
| Policy Underwriting Co.: | Ohio Security Insurance Company |
| Policy No.: | USO (20) 58 58 69 10 |
| Policy Underwriting Co.: | The Ohio Casualty Insurance Company |
| Claim No.: | 23924979 |

Dear Mr. Gregor:

We represent Liberty Mutual Insurance member companies Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") with respect to the issue of insurance coverage for the various claims all now asserted against your client, Ingenero, Inc. ("Ingenero"), in the above-referenced Multi-District Litigation ("MDL"). We have been provided with a copy of your correspondence dated March 17, 2022 to Ohio Security, and write to respond on its behalf and to update its coverage position regarding such claims. This letter also provides Ohio Casualty's coverage position with respect to such claims.

Please be advised that, on the basis of the allegations of the live master petition and as set forth more fully below, the insurance policy issued by Ohio Security to Ingenero provides no coverage for the claims against it in the MDL. Accordingly, Ohio Security disclaims any duty to defend or to indemnify Ingenero in the MDL and, as of the date of this letter, discontinues its participation in the defense of Ingenero in that proceeding.[1] Similarly, the insurance policy issued

---

[1]   Ohio Security agrees to pay Ingenero's reasonable and necessary defense costs incurred between the date of tender to Ohio Security and the date of this letter, subject to a full reservation of rights and without waiving its coverage defenses discussed below.

April 29, 2022
Page 2

by Ohio Casualty to Ingenero provides no coverage for such claims, and Ohio Casualty also disclaims any duty to defend or to indemnify Ingenero in the MDL.

A.     THE FIFTH AMENDED MASTER CONSOLIDATED PETITION

As you know, all previously tendered petitions related to the November 27, 2019 explosions at a Port Neches, Texas butadiene production plant owned and operated by TPC Group, Inc. and/or TPC Group, LLC (collectively "PTC") have been consolidated into the MDL, the live master pleading in which is the Fifth Amended Master Consolidated Petition ("Petition").[2] It alleges in part that, on November 27, 2019, the plant experienced two explosions.

On behalf of the MDL plaintiffs, the Petition assert claims for bodily injury, property damage and/or other harm allegedly caused by the explosions, which also allegedly resulted in the release of and exposure to toxic chemicals and pollutants, including 1, 3-butadiene and benzene. It also seeks damages for "personal injury damages from exposure to chemicals and/or petrochemicals released in the explosions, fires and afterwards," for "physical damages to their houses, businesses, other structures, and personal property," for real property stigma damages, lost profits from businesses, out of pocket evacuation expenses, and punitive damages.

As respects Ingenero, the Petition alleges liability arising from its performance of and/or failure to perform professional services for TPC at the plant. Specifically, the Petition sets forth against Ingenero Count XI, which alleges as follows:

> 176.   During the relevant time period set forth herein, TPC hired Ingenero to provide engineering services and partner with them to oversee the butadiene production at the Port Neches plant. Ingenero agreed to make its own observations and recommendations concerning the plant's process operations and chemistry. In its work, Ingenero reviewed daily operator logs, process operations, and process chemistry data.
>
> 177.   Based upon its review and exercising its engineering judgement, Ingenero reported its daily observations and made recommendations it determined necessary for the safe and efficient operation of TPC's Port Neches plant. Like NALCO, Ingenero knew, or should have known, that the finishing section of TPC's Port Neches facility, including the S4D4 A&B towers, was so badly infected with active popcorn seeds that the only way to ensure the towers could continue to perform safely was to *shut them down,* clean them out, and passivate them. Instead of recommending to TPC that the S4D4 A&B towers be immediately shutdown, cleaned, and passivated, however, Ingenero continued to provide and charge TPC for engineering services it knew or should have known would be ineffective.
>
> 178.   While Ingenero knew, or should have known, that there was an active popcorn polymer infection in the TPC plant's butadiene finishing section at that time, Ingenero also knew, or should have known, that TPC did not understand or

---

[2] It has come to our attention that prior coverage position letters have addressed amended or original petitions filed before referral and consolidation into the MDL. As noted, the proper live petition for purposes of claims currently asserted against Ingenero is the Fifth Amended Master Consolidated Petition.

appreciate this fact. Instead of informing TPC of the active popcorn infection and recommending an immediate shutdown, Ingenero allowed TPC to make decisions based on inaccurate and/or incomplete information. Ingenero knew, or should have known, TPC was relying on Ingenero to make sure TPC had accurate knowledge regarding its plant's process operations and chemistry.

179. At all relevant times, Ingenero was under a duty to utilize reasonable care in the work done at TPC's Port Neches plant.

180. Ingenero's plant obligations and conduct obligated it to protect Plaintiffs, who were within the appreciable zone of risk created by Ingenero's activities and would foreseeably be exposed to harm due to those risks.

181. Ingenero was under a duty of care to refrain from negligent conduct that would cause popcorn polymer issues and/or explosions and emissions resulting in injuries, damages, contamination, and/or pollution of the nearby residents, their property, and others including, but not limited to, Plaintiffs.

182. Ingenero was under a duty to exercise reasonable care while conducting its work at TPC's Port Neches plant, including, *inter alia,* its work/personnel/ equipment/procedures/protocols/maintenance/testing/consulting/advice related to the plant.

183. Ingenero knew, or should have known, that the acts and omissions described herein could result in damage to Plaintiffs, Plaintiffs' children, Plaintiffs' property, nearby residents' health and property, businesses, the land, the water, the environment, and others.

184. Ingenero failed to exercise reasonable care while conducting its TPC Port Neches plant operations, thereby breaching the duties it owed to Plaintiffs and others in the community, including the failure to vet, train, screen, supervise and/or staff to adequately handle and/or monitor the popcorn polymer and other issues at the Port Neches plant. Ingenero's negligence was the direct and/or proximate cause of the explosions and releases at TPC's Port Neches facility on November 27, 2019.

185. Ingenero also failed to provide adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions, thereby further breaching the duties it owed to Plaintiffs and others in the community.

186. Ingenero further failed to perform its undertaking as a reasonably prudent chemical engineer and/or vendor would perform services as demonstrated by the aforementioned, and other, failures.

April 29, 2022
Page 4

    187.    Ingenero's negligence was committed by employees and agents of Ingenero and resulted in a hazardous condition(s) that directly and/or proximately Plaintiffs' injuries, damages, and harm.

    188.    Plaintiffs' injuries and damages resulted from Defendant Ingenero's gross negligence, which entitles Plaintiffs to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE §41.003(a).

    189.    Ingenero owed and breached duties of ordinary and reasonable care to Plaintiffs and others in the community in connection with the maintenance of, consultation, advice upon, and operation of the TPC Port Neches plant, and additionally owed and breached duties to Plaintiffs and others to guard against and/or prevent the risk of the explosion.

    190.    Ingenero also breached its legal duty to Plaintiffs and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent maintenance and/or operation and/or consulting and/or advice related to the TPC Port Neches plant.

    191.    Ingenero knew, or should have known, that its above-described wanton, willful, and reckless misconduct, and failure to exercise reasonable care would result in a disastrous explosion (or two) and significant environmental, health, and property damage.

    192.    Ingenero acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs. NALCO's, Ingenero's, Owners' and Sawgrass Holdings GP's liability is several and independent from that of TPC. Stated differently, NALCO, Ingenero, Owners, and Sawgrass Holdings GP would be liable for Plaintiffs' damages separate and apart from the conduct of TPC, as they were a proximate cause of the explosions and releases and there can be more than one proximate cause of the same.

    193.    By its above-described wrongful actions, inaction, omissions, and the resulting TPC plant explosions, fires, toxic emissions, and concussive shock waves, and their aftermath that extended far beyond plant premises and invaded Plaintiffs' properties, Ingenero directly and/or proximately caused Plaintiffs to suffer (and continue to suffer) the above-described injury, harm and damages to their property, businesses, and themselves. Ingenero's above-described wrongful actions, inaction, omissions, and the resulting TPC plant explosions, fires, toxic emissions, and concussive shock waves, and their aftermath constitute negligence and/or gross negligence at Texas common law-for which Plaintiffs are entitled to compensation and exemplary damages in an amount to be determined by the trier of fact.

A footnote to Count XI adds that "[t]he Certificate of Merit of Victor Edwards, P.E. dated April 22, 2021 is attached hereto as Ex. l and incorporated by reference herein as if fully set forth herein" and that "Plaintiffs rely on this in support of their claims against INGENERO as required by TEX. CIV. PRAC. & REM CODE §150.002."

      As against Ingenero as well as certain other defendants, in turn, the Petition sets forth Count XII, which alleges as follows:

> 195.    Defendants gave misleading information about the TPC plant explosions and their aftermath to Plaintiffs and the general public and/or withheld material information about the TPC plant explosions and their aftermath from Plaintiffs and the general public and failed to exercise reasonable care when doing so.  Plaintiffs justifiably and detrimentally relied on the information provided by Defendants and/or Defendants' silence when they had a duty to speak.
>
> 196.    Defendants also failed to warn Plaintiffs and the general public of a developing danger known to Defendants yet concealed from the public and authorities, including, without limitation, the growing popcorn polymer within the TPC plant that created a significant risk of explosion and release of toxic chemicals and the continued release of toxic chemicals into the community without adequate warning to the community.
>
> 197.    Defendants' above-referenced wrongful actions, inaction, omissions, misleading statements, and/or silence when they had a duty to speak constitute negligent misrepresentation at Texas common law-for which Plaintiffs are entitled to compensation.

**B.**    **THE POLICIES**

      Ohio Security issued to Ingenero a Businessowners Policy, number BZS 58586910 with a policy period of March 1, 2019 to March 1, 2020 (the "Ohio Security Policy").  Ohio Casualty, in turn, issued to Ingenero a Commercial Umbrella Policy, number USO 58586910 also with a policy period of March 1, 2019 to March 1, 2020 ("the Ohio Casualty Policy").  The Ohio Security Policy and Ohio Casualty Policy are referenced together as the "Policies[.]"

      1.    <u>The Ohio Security Policy</u>

      The Ohio Security Policy includes the following provisions, which appear in the coverage form as amended by the "**EXCLUSION - PROFESSIONAL SERVICES (REAL ESTATE AGENTS, INSURANCE AGENTS, TRAVEL AGENTS, FINANCIAL SERVICES, COMPUTER SOFTWARE, INSURANCE OPERATIONS**" endorsement:

> **SECTION II - LIABILITY**
>
> **A.**    **COVERAGES**
>
>     **1.**    **Business Liability**
>
>         **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those

April 29, 2022
Page 6

> damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. . . .
>
> **(1)** The amount we will pay for damages is limited as described in SECTION **D** – Liability And Medical Expenses Limits of Insurance in **SECTION II - LIABILITY**; and
>
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.
>
> **b.** This insurance applies:
>
> **(1)** To "bodily injury" and "property damage" only if:
>
> **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>
> **(b)** The "bodily injury" or "property damage" occurs during the policy period . . . .
>
> **B.** **EXCLUSIONS**
>
> **1.** **Applicable to Business Liability Coverage**
>
> This insurance does not apply to . . . [:]
>
> **f.** **Pollution** . . . .
>
> **(2)** Any loss, cost or expense arising out of any:
>
> **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any

April 29, 2022
Page 7

>>way respond to, or assess the effects of, "pollutants" . . . .

    **j.**    **Professional Services**

>"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to . . . [:]
>
>    **(2)**    Preparing, approving, or failing to approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
>    **(3)**    Supervisory, inspection or engineering services . . . ;
>
>    **(12)**    Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.
>
>This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

    2.    <u>The Ohio Casualty Policy</u>

The Ohio Casualty Policy, in turn, includes the following provisions, which appear in the coverage form as amended by the "PERSONAL AND ADVERTISING INJURY - FOLLOWING FORM" endorsement:

    **I.**    **COVERAGE**

>**A.**    We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the **INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION III. DEFENSE.**

April 29, 2022
Page 8

    **B.**    This insurance applies to:

        **1.**    "Bodily injury" or "property damage" only if:

            **a.**    The "bodily injury" or "property damage" occurs during the Policy Period; and

            **b.**    The "bodily injury" or "property damage" is caused by an "occurrence" happening anywhere . . . .

        **2.**    "Personal and advertising injury" caused by an "offense" arising out of your business but only if the "offense" was committed during the Policy Period. . . .

    **G.**    **Retained Limit**

    We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

        **1.**    the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

        **2.**    the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

    and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

    Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

**III.**    **DEFENSE**

    **A.**    We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

        **1.**    the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the

> Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or
>
> **2.** damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

The Ohio Casualty Policy also includes the following provisions, which appear in the "**PROFESSIONAL SERVICES EXCLUSION**" endorsement:

The following exclusion is added to Section **IV. – EXCLUSIONS:**

This insurance does not apply to:

"Bodily injury", "property damage", "personal injury" , "advertising injury" or "personal and advertising injury" caused by the rendering of or failure to render any professional service.  This includes but is not limited to . . . [:]

> **2.** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; [and]
>
> **3.** Supervisory, inspection or engineering services. . . .

This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render any professional service.

The Ohio Casualty Policy also includes the following provisions, which appear in the "**ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION**" endorsement:

This insurance does not apply to:

> Any liability arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
> **1.** the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> **2.** supervisory, inspection, architectural or engineering activities.

    This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

 The Ohio Casualty Policy also includes the following provisions, which appear in the "**AMENDMENT OF POLLUTION EXCLUSION**" endorsement:

 Exclusion **L. under SECTION IV. EXCLUSIONS** is replaced by the following:

This insurance does not apply to:

**L.** **1**. "Bodily injury", "property damage", "personal injury", "advertising injury" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

  **2.** Any loss, cost or expense arising out of any:

    **a.** Request, demand, order or statutory or regulatory requirement that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Paragraph **1.** of this exclusion **L.** does not apply to the following . . . [:]

**(2)** "Bodily injury" or "property damage" arising out of the heat, smoke or fumes from a "hostile fire". . . .

However, the exception[ ] to this exclusion **L.** in paragraph[ ] **(1)** . . . above appl[ies] only to the extent that insurance is afforded for such "bodily injury" or "property damage" by "underlying insurance". Provided, however, that the coverage afforded by this policy will be no broader than the coverage afforded by such "underlying insurance" . . . .

Paragraph **2.** of this exclusion **L.** does not apply to liability for damages because of "property damage" that the "Insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or

    on behalf of a governmental authority to the extent that insurance is afforded for such damages by "underlying insurance".  Provided, however, that the coverage afforded by this policy will be no broader than the coverage afforded by such "underlying insurance".

    As used in this exclusion:

    "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

As they contain other provisions as well, we suggest that you read the Policies in their entirety.

    C.    COVERAGE POSITION

    As discussed above, the Petition alleges as against Ingenero liability arising from its performance of and/or failure to perform professional services for TPC at the plant.  The Petition alleges that "Ingenero was hired by TPC to provide engineering services and partner with TPC to oversee the butadiene production at TPC's Port Neches plant[,]" for example, and that "Ingenero allowed TPC to make decisions based on inaccurate information and Ingenero knew, or should have known that TPC was relying on Ingenero to make sure TPC had accurate knowledge regarding its Port Neches plant's process operations and chemistry."

    The Ohio Security Policy includes a Professional Services Exclusion providing in part that "[t]his insurance does not apply to . . . '[b]odily injury'[ or] 'property damage' . . . caused by the rendering or failure to render any professional service[;]" that "[t]his includes but is not limited to . . . [p]reparing, approving, or failing to approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications" as well as "[s]upervisory, inspection or engineering services" and "[s]ervices in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions."

    Similarly, the Ohio Casualty Policy includes a Professional Services Exclusion providing in part that "[t]his insurance does not apply to . . . '[b]odily injury'[ or] 'property damage' . . . caused by the rendering of or failure to render any professional service[;]" that "[t]his includes but is not limited to . . . [p]reparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications . . . [and] [supervisory, inspection or engineering services[;]" and that "[t]his exclusion applies even if the 'claims' against any 'Insured' allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that 'Insured', if the 'occurrence' . . . or other act, error or omission involved the rendering of or failure to render any professional service."

April 29, 2022
Page 12

The Ohio Casualty Policy also includes an ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION providing in part that "[t]his insurance does not apply to . . . [a]ny liability arising out of the rendering of or failure to render any professional services by you or any engineer . . . who is either employed by you or performing work on your behalf in such capacity[;]" that "[p]rofessional services include . . . the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications" as well as "supervisory, inspection, . . . or engineering activities[;]" and that "[t]his exclusion applies even if the 'claims' against any 'Insured' allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that 'Insured', if the 'occurrence' . . . or other act, error or omission involved the rendering of or failure to render any professional services by you or any engineer . . . who is either employed by you or performing work on your behalf in such capacity."

By their terms, such professional services exclusions in the Ohio Security Policy and Ohio Casualty Policy operate as a complete bar to any coverage thereunder for the claims against Ingenero in this instance. Accordingly, Ohio Security disclaims any duty to defend or to indemnify Ingenero in the MDL and, as of the date of this letter, discontinues its participation in the defense of Ingenero in that proceeding. For similar reasons, Ohio Casualty also disclaims any duty to defend or to indemnify Ingenero in the MDL.

In addition to the exclusions discussed above, your attention is specifically drawn to the following, which also may operate to limit and/or bar coverage for the claims asserted against Ingenero in the lawsuit:

- The Policies do not provide coverage for equitable relief, to the extent sought by the plaintiffs, because such relief does not constitute "damages" under the Policies;

- The Policies do not provide coverage for damages to the extent such damages are not for "bodily injury," "personal injury" and/or "property damage" as those terms are defined in the Policies;

- There is no coverage under the Policies for "bodily injury," "personal injury" and/or "property damage" that did not occur during the policy period thereof;

- There is no coverage under the Policies for "bodily injury," "personal injury" and/or "property damage" not caused by an "occurrence" as that term is defined in the Policies;

- There is no coverage under the Ohio Security and/or Ohio Casualty Policy for "bodily injury," "personal injury" and/or "property damage" which was expected or intended from the standpoint of the insured;

- The pollution exclusions in the Policies may bar coverage thereunder;

- There is no coverage under the Policies for costs and expenses or other obligations assumed by any insured without notice to and the consent of Ohio Security and/or Ohio Casualty;

April 29, 2022
Page 13

- To the extent precluded by the terms of the Policies and/or public policy, there is no coverage for any punitive, exemplary or like damages that may be assessed against any insured; and

- To the extent that coverage might otherwise exist, the obligations of Ohio Security and/or Ohio Casualty under their respective policies are limited by the "other insurance" condition, any deductible, any per occurrence, per person, or aggregate limits of liability, and any other policy provisions precluding the stacking or accumulation of multiple policy limits of liability. Moreover, any coverage under the Ohio Casualty Policy is excess of the "retained limit" as defined therein.

While we have sought to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be construed as a waiver of any right or basis which Ohio Security and/or Ohio Casualty may have to disclaim coverage, and Ohio Security and Ohio Casualty reserve all their rights in this regard. Ohio Security and Ohio Casualty also reserve the right to seek declaratory relief to determine their rights and obligations under their policies.

If you have any additional information you would like Ohio Security and/or Ohio Casualty to consider concerning their coverage position regarding the claims against Ingenero in the MDL, please forward it to us. Should you have any questions or comments concerning this letter, please feel free to contact the undersigned.

Regards,

*Ellen Van Meir*

Ellen Van Meir
Mariah B. Quiroz

MBQ/aec

cc:  Kathleen MacDonald                    VIA E-MAIL:  kathleen.macdonald@libertymutual.com