IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE | § | |
| COMPANY and THE OHIO CASUALTY | § | |
| INSURANCE COMPANY, | § | |
|     *Plaintiffs*, | § | CIVIL ACTION NO. |
| | § | 1:22-cv-00177 |
| v. | § | |
| | § | |
| INGENERO, INC., | § | |
|     *Defendant*. | § | |

**INGENERO'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to FED. R. CIV. P. 56, Ingenero, Inc. ("Ingenero") moves for summary judgment against Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") (collectively, the "Insurers").

## I. CASE OVERVIEW

1.    This is an insurance coverage dispute arising out of an underlying Multi-District Litigation consolidated in Cause No. A2020-0236-MDL; *In Re: TPC Group Litigation*, in the 128th Judicial District Court of Orange County, Texas (the "Underlying MDL"). The Underlying MDL relates to numerous claims filed after a November 7, 2019, explosion at TPC Group's ("TPC") facility located at 2102 TX-136 Spur, Port Neches, Texas 77561 ("TPC Facility"). Ingenero provided various remote analytic services to TPC and is one of several named defendants in the Underlying MDL.

2.    The only issue before the Court is whether the Insurers, as the parties with the burden of proof, can conclusively demonstrate that coverage for every claim against Ingenero in the Underlying MDL is precluded by the professional services exclusion in the general liability and excess policies issued to Ingenero. Under the applicable eight corners rule, however, it is

clear that the allegations made against Ingenero go well beyond just professional engineering services and, as a result, the Insurers must honor their contractual obligations under the policies to provide Ingenero with a defense in the Underlying MDL.[1]  As set forth below, summary judgment on this issue is appropriate.

## II. GROUNDS FOR SUMMARY JUDGMENT

- Canons of Coverage Analysis: If any allegation against Ingenero in the Underlying MDL is covered—or even *potentially* covered—under the policies, the Insurers have a duty to defend Ingenero.  In evaluating the allegations in the Underlying MDL, they must be liberally construed in favor of coverage.  Further, if the facts alleged in the Underlying MDL do not clearly bring the case within or without coverage, the Insurers must provide a defense to Ingenero.  Ultimately, the burden of proof lies with the Insurers to fully negate coverage with all doubts resolved in favor of the insured, Ingenero.

- Coverage Determination:  The Insurers take the unreasonable position that every complained of action or inaction alleged against Ingenero in the Underlying MDL constitutes a professional engineering service excluded from coverage under the policies' professional services exclusion.  The petition in the Underlying MDL, however, belies this contention.  As the petition in the Underlying MDL makes clear, the allegations extend well beyond professional engineering services and, instead, incorporate both allegations involving process engineering services and a litany of additional alleged transgressions related to other acts or omissions of Ingenero wholly unrelated to any professional service.  As a result, and as the case law makes evident, the Insurers must honor their duty to defend Ingenero.

---

[1] The duty to defend and the duty to indemnify are distinct and separate duties.  *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). The insurer has a duty to defend in any lawsuit that "alleges and seeks damages for an event potentially covered by the policy," whereas "the duty to indemnify means the insurer will pay all covered claims and judgments against an insured." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252–53 (5th Cir. 2011).  While an insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy, "an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.*  Accordingly, Ingenero does not seek a judgment as to the duty to indemnify at this time, as this duty cannot likely be ascertained until the Underlying MDL has concluded.

### III. Factual Background

**A.    Ingenero was Retained by TPC to Provide it with various Data Analytic Tools and Engineering Analytics related to the TPC Facility.**

3.    Ingenero is a consulting company that provides process engineering services in addition to non-engineering services and analytics. Although Plaintiffs attempt to frame Ingenero as a company that solely provides engineering services, the broad range of services—as detailed on Ingenero's website—unequivocally extend beyond engineering consulting and include operational analytics, project management services, plant performance management, and supply chain services, among various other services.[2]

4.    Plaintiffs in the Underlying MDL ("MDL Plaintiffs") contend that TPC hired Defendant Ingenero to provide engineering services *and* partner with TPC to oversee the butadiene production at TPC's Facility. *See* Fifth Amended Master Consolidated Petition in the Underlying MDL, attached as Ex. A, ¶ 79.  The allegations in the Underlying MDL, addressed below, make it clear that Plaintiffs claims against Ingenero are not solely limited to professional engineering services.

**B.    An Explosion at the TPC Facility Results in Claims Filed Against Ingenero in the Underlying MDL and Ingenero Submits the Claims to the Insurers.**

5.    On November 27, 2019, there was an explosion event at the TPC Facility (the "Plant Explosion").  The MDL Plaintiffs attribute the Plant Explosion to a "popcorn polymer infection" within TPC's Facility.  *See* Ex. A, ¶¶ 57, 70, 77, 80, 81, 177, 178.  Popcorn polymer is a substance that can build and replicate during butadiene production.  The U.S Chemical Safety and Hazard Investigation Board (CSB) concluded that the substance accumulated in piping at a process pump that TPC had taken offline or out of service for several months.

---

[2] See https://www.ingenero.com/

Popcorn polymer developed in this offline piping, also known as a "dead leg" and exponentially expanded until pressure inside the dead leg caused the piping section to rupture, releasing butadiene that then exploded.  The MDL Plaintiffs claim these explosions resulted in damages, including personal bodily injury and property damage.  *See e.g., id.* at ¶¶ 21, 28, 82, 94, 193, 200.   The Underlying MDL asserts causes of action against several entities that worked on behalf of TPC or at the TPC Facility at the time of the Plant Explosion.    Ingenero is one of several defendants in the Underlying MDL.

6.    Upon receiving notice of the claims against it, Ingenero immediately notified the Insurers and made a claim for coverage in connection with the Underlying MDL.  The Insurers do not dispute that Ingenero timely and properly submitted the claim to Plaintiffs.  In fact, on June 16, 2021, subject to a reservation of rights, the Insurers agreed to provide coverage for Ingenero's claim. Dkt. 5-1.  On March 8, 2022, Plaintiffs provided Ingenero with a supplemental coverage letter and again agreed to cover Ingenero's claims under a reservation of rights.  Dkt. 5-2.

**C.    The Insurers Rely Solely on the Professional Services Exclusion in the Policies in an Effort to Avoid their Coverage Obligations and the Duty to Defend Ingenero.**

7.    On April 29, 2022, less than two months after Plaintiffs' supplemental coverage letter, Plaintiffs reversed course, informing Ingenero it was now fully denying coverage under the Policies' Professional Services Exclusion ("April 29 Letter").  Dkt. 5-3.    Immediately following the April 29 Letter, the Insurers filed this declaratory judgment action, asking the Court to find that the Policies' Professional Services Exclusion precludes all coverage for Ingenero in the Underlying MDL.  Ingenero responded with its counterclaim, requesting that the Court find that that the Insurers, as a matter of law, have a duty to defend Ingenero in the

Underlying MDL, and that Ohio Security, who issued the primary policy, has breached its duty to defend.

8.      Neither the Ohio Security Policy (primary) nor the Ohio Casualty Policy (excess) include a Declaration that defines what specific actions or omissions by Ingenero constitute professional services excluded from coverage.  Instead, the Insurers solely rely on the boilerplate exclusionary language in the policy form and corresponding endorsement.   The coverage provided by the policies, as well as the duplicative professional services exclusions contained in both policies, are discussed below.

> ***1.      The Ohio Security Businessowners' Policy covers bodily injury and property damage incurred by third parties.***

9.      Ohio Security issued to Ingenero a Businessowners Policy, number BZS (20) 58 58 69 10 with a policy period of March 1, 2019 to March 1, 2020 (the "Ohio Security Policy"). Dkt. 1-3, fully incorporated herein by reference.  In Section II of its coverage form, the Ohio Security Policy provides Business Liability Coverage, which states in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

Dkt. 1-3, p 81 (emphasis added).

1 0 .      Section II of the Ohio Security Policy coverage form includes a set of exclusions applicable to Business Liability Coverage.  As amended by endorsement, the Professional Services Exclusion therein, exclusion j., provides in relevant part:

> This insurance does not apply to . . . [:]
> **j.      Professional Services**
>       "Bodily injury," "property damage" or "personal and advertising injury"

"caused by the rendering or failure to render any professional service.  This includes but is not limited to . . . [:]

(2)     Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3)     Supervisory, inspection or engineering services;

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

Dkt. 1-3, pp. 88-89.[3]

> ### 2.     *The Ohio Casualty Excess Policy provides excess coverage for bodily or property damage over the Ohio Security Policy.*

11.     In addition to the Ohio Security Policy, Ohio Casualty issued Ingenero a Commercial Umbrella Policy, number USO (20) 58 58 69 10 with the same coverage period (the "Ohio Casualty Policy"),[4] obligating Ohio Casualty to cover Ingenero once the limits on the primary policy had been exhausted.  Dkt. 1-4, fully incorporated herein by reference.   As amended by endorsement, the Ohio Casualty Policy coverage form includes an insuring agreement providing in part:

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

 Dkt. 1-4, p. 17.

---

[3] Although the Insurers also cite to a Computer Software Exclusion found in exclusion j. (12) of the Ohio Security Policy, *see* Dkt. 1, ¶ 16, it has no application to this dispute as Ingenero did not sell, license, franchise or furnish computer software to TPC nor does the Underlying MDL allege that Ingenero sold, licensed, franchised, or furnished computer software to TPC.

[4] The Ohio Security Policy and the Ohio Casualty Policy are together referred to as the "Policies".

12. As with the Ohio Security Policy, the Ohio Casualty Policy includes a profession services exclusion endorsement which provides in relevant part:

This insurance does not apply to:

"Bodily injury," "property damage," "personal injury," "advertising injury" or "personal and advertising injury" caused by the rendering of or failure to render any professional service. This includes but is not limited to:

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured," if the "occurrence," "offense" or other act, error or omission involved the rendering of or failure to render any professional service.

Dkt. 1-4, p. 50.  The Ohio Casualty Policy also contains an additional endorsement largely duplicative of the exclusion language stated above, stating:

This insurance does not apply to:

Any liability arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Dkt. 1-4, p. 36.  For practical purposes, the applicable portions of the professional services exclusions contained in the Policies are identical.  As detailed below, however, the professional services exclusions do not exclude all coverage for the catalogue of allegations made against Ingenero in the Underlying MDL.

### III.  ARGUMENT AND AUTHORITIES

### A.    Summary Judgment Standard and Choice of Law.

13.    A determination as to whether coverage applies is a question of law.  *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.,* 903 F.3d 435, 445 (5th Cir. 2018); *see also State Farm Gen. Ins. Co. v. White,* 955 S.W.2d 474, 475 (Tex. App.—Austin 1997, no pet.) (noting that whether an insurance carrier owes a duty to defend under an insurance policy is a question of law).  Summary judgment is proper when the pleadings and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008); FED. R. CIV. P. 56(c).     Where, as in the case at bar, federal jurisdiction is based on diversity of citizenship, a federal court applies the substantive law of the forum state. *Aubris Res. LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483, 486 (5th Cir. 2009).  Accordingly, Texas substantive law governs the declaratory judgment action in this case.  *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (holding that federal courts must apply state substantive law in diversity actions).

### B.    The Duty to Defend is Determined under the Eight Corners Rule, *i.e.*, the Four Corners of the Policy and the Four Corners of the Pleadings.

14.    To determine whether a lawsuit would give rise to a duty to defend, Texas law applies the "Eight Corners Rule."  *Willbros RPI, Inc. v. Cont'l Cas. Co.,* 601 F.3d 306, 309 (5th Cir. 2010). Under that rule, a court looks only at the insurance policy itself and the pleadings in

the complaint in the underlying suit. *Id.*  Resort to evidence outside the four corners of these two documents is generally prohibited. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex.2006)). The Court must consider the factual allegations in the underlying complaint "without regard to their truth or falsity and resolve all doubts regarding the duty to defend in the insured's favor." *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (internal quotations and ellipse omitted).

> **1.    The Insurers have the burden of proof to conclusively establish that every allegation in the Underlying MDL fall within the purported exclusion.**

15.    The Insurers, as the parties seeking to apply a policies' exclusions to avoid coverage, have the burden of proving that the allegations in the Underlying MDL fall within the Policies' applicable professional services exclusions. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008); *Weitzman v. Allstate Vehicle & Prop., Ins. Co.*, No. CV H-21-1871, 2022 WL 1078619 (S.D. Tex. Apr. 11, 2022) (holding that the insurer bears the burden of proving the professional services exclusion applies), quoting *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). *See also Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (noting that in a suit to recover on an insurance contract, the insured bears the initial burden of showing that there is coverage, while the insurer has the burden of proof as to "the applicability of any exclusions in the policy); *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 204 (Tex. 2004) (finding that "[b]ecause Utica's policy treats the professional services exclusion as an exception to coverage, Utica bears the burden of proof to establish that the exclusion applies in this case"). Language of a policy exclusion or  exception  to coverage that  the insurer claims  is  an  avoidance  or  an

affirmative defense.  *See* TEX. INS. CODE § 554.002.

> 2.     ***The Professional Service Exclusions Contained in the Policies Must be Strictly Construed Against the Insurer.***

16.     Under Texas law, a contract of insurance is generally subject to the same rules of construction as other contracts. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991).  In construing policy language, the court should read the policy as a whole and "must give effect to all contractual provisions so that none will be rendered meaningless." *Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 Fed. Appx. 267, 270 (5th Cir. 2008) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003)); *see also Tex. Farm Bureau Mut. Ins. Co. v. Sturrock,* 146 S.W.3d 123, 134 (Tex. 2004).

17.     Texas courts do not favor exclusions from coverage and will strictly construe them against the insurer. *Davis-Ruiz Corp.,* 291 Fed. Appx. at 270 *(*citing *State Farm Lloyds v. Marchetti,* 962 S.W.2d 58, 61 (Tex. App.1997)).   In construing an exclusionary clause susceptible of more than one reasonable interpretation, "[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *see also Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 Fed. Appx. 267, 270 (5th Cir. 2008); *Utica Nat'l Ins. Co. v. Am. Indem. Co.,* 141 S.W.3d 198, 202 (Tex. 2004).  In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.  *Hudson Energy*, 811 S.W.2d at 555, (citing *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976).

### 3.   All doubts regarding whether an allegation in the Underlying MDL is covered by the Policies must be construed in favor of Ingenero.

18.   Any doubt as to whether an allegation in the Underlying MDL is covered by a the Insurers' Policies must be construed in favor of the insured—Ingenero. *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015). According to longstanding case law, if there is even a *potential* that an allegation in the Underlying MDL falls outside of a policy's exclusion, the Insurer is required to provide the insured with a defense. *Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 491 (5th Cir. 2008); *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).

19.   According to the Court in *Gore Designs*, "[t]he [eight corners] rule is very favorable to insureds because doubts are resolved in the insured's favor." The Fifth Circuit went on to state as follows:

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

*Gore Designs,* 538 F.3d at 368-369 (citing *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997)); *see also King v. Dallas Fire Ins. Co*., 85 S.W.3d 185, 187 (Tex. 2002) ("[W]e resolve all doubts regarding the duty to defend in favor of the duty.").

### 4.   If the allegations in the Underlying MDL <u>potentially</u> include a covered claim, the Insurers are required to defend the entire lawsuit.

20.   If the Underlying MDL contains multiple allegations or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises

if at least one of the claims in the complaint is facially within the policy's coverage. *Great Am. Ins. Co. v. Beyond Gravity Media, Inc.,* 560 F. Supp. 3d 1024 (S.D. Tex. 2021) (citing *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995)), (citing *Rhodes v. Chi. Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983)). For example, where the policy excludes coverage for professional services as it does here, if the underlying complaint's alleged injury occurred both because of negligent professional services and negligent services that are incidental or of some other kind, the Insurers must defend the entire lawsuit. *See Willbros*, 601 F.3d at 312. Once coverage has been found for any portion of a suit, an insurer must defend the entire suit. *See Lafarge Corp. v. Hartford Cas. Ins. Co.,* 61 F.3d 389, 393, 395 (5th Cir.1995); *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.,* 917 S.W.2d 29, 56 (Tex. App.—Amarillo 1995), *rev'd in part on other grounds,* 974 S.W.2d 51 (Tex. 1998).

21.    In *Willbros RPI, Inc. v. Cont'l Cas. Co*., 601 F.3d 306 (5th Cir. 2010), the insurance policy at issue included a professional services exclusion with the same exclusionary language in paragraph (2) and (3) of the Insurers' Policies. Exxon alleged that "defendants ... approved the plans," "the drill bore damaged EMPCo's pipelines," and "[d]efendants owed a duty to use ordinary care to analyze, review, supervise, construct, operate, and monitor the work." *Id*. at 310. When examining the policy's exclusion provision with the allegations in the underlying lawsuit, the Court found that Exxon based liability, at least in part, on conduct that did not qualify under the professional services exclusion. *Id*. Specifically, Exxon alleged that "defendants ... approved the plans," "the drill bore damaged EMPCo's pipelines," and "[d]efendants owed a duty to use ordinary care to analyze, review, supervise, construct, operate, and monitor the work." Although the allegations include conduct that arguably qualifies as a professional service under the terms of the exclusion (*e.g.,* approval of the plans), they also

contain conduct that clearly does not fit within the exclusion (*e.g.*, drilling, constructing, operating). *Id*.

22. Similarly, the facts in *Gore Designs* involved the installation and engineering of an in-flight entertainment/cabin management system that subsequently malfunctioned, damaging the aircraft. *Gore Designs*, 538 F.3d at 367. In interpreting the underlying allegations with a professional services exclusion like that in the present case, the Court in *Gore Designs* found that under the Statement of Claim, the design of the project—professional services—may have been negligent, resulting in the damage to the Aircraft. *Id.* at 372. Alternatively, according to the court, a worker may simply have made a mistake in the implementation of the design, which could be ordinary negligence. *Id.* (citing *Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133 (5th Cir.1990) (failure to safeguard a patient's window did not fall within professional services exclusion); *see also Allstate Ins. Co. v. Disability Servs. of the Sw.*, 400 F.3d 260, 264 (5th Cir.2005) (distinguishing between services that are inherent in the provision of professional services and those that are incidental to such services). The Court in *Gore Designs* held that "***because the Statement of Claim does not unequivocally place the blame on the engineering services, the exclusion does not negate the duty to defend***." *Id.* at 373 (emphasis added).

23. Similarly, the Texas Supreme Court, interpreting a professional services exclusion excluding professional medical services, held that the exclusion did not preclude a duty to defend where the petition alleges both negligent professional services and negligent services of some other nature. *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198 (Tex. 2004). If the underlying complaint "potentially includes a covered claim, the insurer must defend the entire suit." *Id.* (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (5th Cir. 2008).

**C.      The Insurers' Contrary and Overbroad Interpretation of the Professional Services Exclusions Would Render the Policies' Illusory.**

24.     In addressing what type of activity is considered a professional service within an insurance policy, the Fifth Circuit requires that: "the task must arise out of acts particular to the individual's specialized vocation, [and] ... it must be necessary for the professional to use his specialized knowledge or training." *Admiral Ins. Co. v. Ford*, 607 F.3d 420 (5th Cir. 2010); *Atlantic Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476–77 (Tex. App.—Dallas 1998, pet. denied. A service is "professional" if it requires "specialized knowledge or training," not solely because a professional performs the service. *Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476–77 (Tex. App.—Dallas 1998, pet. denied).  In this instance, therefore, the "professional service" that is "particular to [Ingenero's] specialized vocation" is process engineering services.  As the allegations in the Underlying MDL make clear, the allegations are not limited solely to the actions in performance of process engineering services by Ingenero, *see* Section D, *infra* and, thus, the Professional Services Exclusion does not absolve Insurers from the duty to defend.

25.     The Insurers, however, appear to broadly interpret the Policies' professional services exclusions to exclude any and all services that Ingenero provided based solely on the fact that some of the allegations in the Underlying MDL relate to engineering services.  In effect, the Insurers contend there is no coverage for Ingenero's claim because all the services Ingenero—whether are not they involve professional *engineering* services—are "professional services" within the Policies' professional services exclusions. This inaccurate interpretation ignores that many of the services Ingenero provides, such as project management consulting, supply chain consulting, safety management, monitoring, and maintenance, do not require specialized engineering knowledge and training.  As a result, this expansive interpretation would

render the Policies illusory and ineffectual because, under the Insurers' construction of the Policies' exclusions, there is no factual circumstance under which Ingenero could receive bodily injury and property damage coverage under the Policies.

26.    Courts are to "adopt the construction of an exclusionary clause urged by the <u>insured</u> as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.,* 99 F.3d 695, 701 (5th Cir.1996) (quoting *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987)).  In this case, the construction of the professional services exclusion offered by Ingenero is far more reasonable than the construction offered by the Insurers.  In fact, any other construction of the exclusion would render the Policies illusory and unenforceable. *See Davis–Ruiz Corp. v. Mid–Continent Cas. Co.,* 281 Fed. Appx. 267, 274 (5th Cir.2008) (Texas courts look with disfavor on policy constructions that would render coverage under a policy or endorsement largely illusory); *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.,* 185 S.W.3d 440, 444 (Tex. 2005) (rejecting insurer's construction of an exclusion because it "would render coverage under the endorsement largely illusory"); *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 828 (Tex. 1997) (Rejecting insurer's interpretation in part because it "would render insurance coverage illusory for many of the things for which insured commonly purchase insurance").[5]

---

[5] *See also*, *St. Paul Ins. Co. v. Texas Dept. of Transp*., 999 S.W.2d 881, 886–87 (1999) (reasoning that "St. Paul collected a premium for coverage of additional insureds but would interpret its professional services exclusion to exclude all such coverage" and therefore "St. Paul's interpretation would render the policy meaningless to all additional insureds—in this case, all persons required to be named by Abrams as 'additional protected persons'"); cf. *Mid–Continent Cas. Co. v. Bay Rock Operating Co*., 614 F.3d 105, 114 (5th Cir.2010) ("Under Texas law, we are required to interpret '[c]ontract provisions ... so as to avoid meanings that produce unreasonable, oppressive, or absurd results ....'") (quoting *Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co*., 762 F.2d 1239, 1245 (5th Cir.1985)).

**D.     The Factual Allegations in the Underlying MDL Trigger the Insurers' Duty to Defend.**

27.     According to the Underlying MDL, TPC hired Defendant Ingenero to provide engineering services <u>and</u> partner with TPC to oversee the butadiene production at TPC's Port Neches plant. Ex. A, ¶ 176 (emphasis added). The Underlying MDL also alleges that Ingenero failed in its duties while "conducting its TPC Port Neches plant operations" (*Id*. at ¶ 184); Ingenero failed to provide "adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions." (*Id*. at ¶ 185); Ingenero failed to perform its "undertaking as a reasonably prudent chemical engineer and/or vendor." (*Id*. at ¶ 186); Ingenero "breached its duties of ordinary and reasonable care in connection with the maintenance of, consultation, advice upon, and operation of the TPC Port Neches plant." (*Id*. at ¶¶ 189- 190).

*1.     The Specific Allegations Against Ingenero are Broadly Stated and Encompass Both Engineering Services and Non-Professional Service Giving Rise to the Insurers' Duty to Defend.*

28.     Plaintiffs in the Underlying MDL accuse Ingenero of negligence and gross negligence for a litany of alleged failures, including the following:

176. During the relevant time period set forth herein, <u>TPC hired Ingenero to provide engineering services and partner with them to oversee the butadiene production at the Port Neches plant.</u> Ingenero agreed to make its own observations and recommendations concerning the plant's process operations and chemistry. In its work, Ingenero reviewed daily operator logs, process operations, and process chemistry data.

184. Ingenero failed to exercise reasonable care while conducting its TPC Port Neches <u>plant operations</u>, thereby breaching the duties it owed to Plaintiffs and others in the community, including the <u>failure to vet, train, screen, supervise and/or staff to adequately handle and/or monitor the popcorn polymer and other issues at the Port Neches plant.</u> Ingenero's negligence was the direct and/or proximate cause of the explosions and releases at TPC's Port Neches facility on November 27, 2019.

16

185. Ingenero also <u>failed to provide adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions</u>, thereby further breaching the duties it owed to Plaintiffs and others in the community.

186. Ingenero further <u>failed to perform its undertaking as a reasonably prudent chemical engineer and/or vendor</u> would perform services as demonstrated by the aforementioned, and other, failures.

189. Ingenero owed and <u>breached duties</u> of ordinary and reasonable care to Plaintiffs and others in the community <u>in connection with the maintenance of, consultation, advice upon, and operation of the TPC Port Neches plant</u>, and additionally owed and breached duties to Plaintiffs and others to guard against and/or prevent the risk of the explosion.

190. Ingenero also breached its legal duty to Plaintiffs and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the <u>negligent maintenance and/or operation and/or consulting and/or advice related to the TPC Port Neches plant.</u>

See Ex. A, ¶¶ 176-190 (underlined emphasis added).  These broadly stated allegations are not limited to professional engineering services; rather, they are all-encompassing and encase both the engineering services provided by Ingenero, as well as all non-engineering and incidental services Ingenero provided or is alleged to have provided.  Accordingly, the Insurers must honor their duty to defend Ingenero in the Underlying MDL.

>    **2.    *Allegations against Ingenero include actions or inactions that are outside of the Policies' Professional Services Exclusions and, therefore, are covered under the Policies.***

29.    The expansive list of grievances against Ingenero are not unequivocally limited to allegations involving Ingenero's rendering or failure to render professional engineering services. For example:

- <u>Para. 176: TPC hired Ingenero to provide engineering services and partner with them to oversee the butadiene production at the Port Neches plant.</u>

30.    The above allegations allege that Ingenero was to provide engineering services

and partner with TPC in overseeing butadiene production at the plant.  The fact that MDL Plaintiffs include the conjunction "and" after "engineering services" is a clear indication that the "overseeing of butadiene production" involves services and activities that are not subsumed within Ingenero's professional "engineering services."

31.     Further, the alleged failure to oversee butadiene production at the TPC plant is a broad and far-reaching allegation, and MDL Plaintiffs make no attempt to limit the alleged failure to oversee butadiene production to the enumerated engineering services in paragraphs (2) and (3) of the Policies' professional services exclusion.  Moreover, had the Insurers intended "overseeing of butadiene production" to fall within a professional services exclusion, they could have easily provided for such an exclusion in a Policy Declaration. They did not include such services as an excluded professional service and instead chose to rely on the policy forms' boilerplate exclusionary language.

- Para. 184: Ingenero failed to exercise reasonable care while conducting its TPC Port Neches plant operations, including:

  - failure to vet,
  - failure to train,
  - failure to screen,
  - failure to supervise and/or
  - failure to staff adequately
  - failure to handle and/or monitor the popcorn polymer at the Port Neches plant; and
  - failure to handle and/or monitor "other issues" at the Port Neches plant.

32.     The allegation that Ingenero failed to exercise reasonable care while "conducting its TPC Port Neches Plant operations" is in itself a broad allegation that reaches far beyond the enumerated professional services applicable to Ingenero's professional engineering services.  In addition, Plaintiffs do not attempt to tie the above list of alleged failures solely to Ingenero's rendering of or failure to render any of the enumerated professional services deemed excluded

from coverage.   Because Plaintiffs make no attempt to confine the broad allegations to the rendering or failure to render professional engineering services set forth in the Policies' exclusions, the Court must interpret the allegations liberally in favor of coverage.  *See* Sections B. 2-3, *supra*.

33.     Further, the alleged failure to "handle" and/or "monitor" the popcorn polymer at the Port Neches plant, and the alleged failure to handle and/or monitor "other issues" at the Port Neches plant, potentially involves activities and services outside of any professional engineering services.  The catchall allegation that Ingenero failed to handle or monitor "other issues" at the plant, plainly broadens the allegations beyond the specific professional services excluded from the Policies' coverage.

- Para. 185: Allegations that Ingenero failed to provide:

  - adequate service,
  - advice,
  - consulting,
  - safeguards,
  - protocols,
  - communication,
  - procedures,
  - personnel,
  - equipment,
  - inspections,
  - engineering services, and
  - resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions.

34.     The above list of allegations against Ingenero, set forth in Paragraph 185 of the Underlying MDL petition, expressly includes allegations that do not fall within the Policies' professional services exclusion. Specifically, allegations involving the <u>failure to provide safeguards, protocols, procedures, equipment, and resources involve broad and far-reaching allegations that are not limited to an excluded professional engineering service under the</u>

Policies.   Further, as to allegations that could fall within a professional engineering service, the MDL Plaintiffs do not specify whether "advice," "consulting," and "communication" involve Ingenero's professional engineering services or other non-excluded services.  Moreover, the fact that "engineering services" is a separate item in a long list of grievances, demonstrates that Plaintiffs' allegations involve both Ingenero's professional engineering services (excluded from coverage), as well as assertions not limited to an enumerated professional service in the Policies' professional service exclusions (requiring coverage).  As a result, the Insurers must abide by their obligation to provide Ingenero a defense in the Underlying MDL.  *See* Section B., 3-4, *supra*.

- Para 186: Ingenero further failed to perform its undertaking as a reasonably prudent chemical engineer and/or vendor would perform services as demonstrated by the aforementioned, and other, failures.

35.    This paragraph, specifically relating to engineering services, demonstrates that Plaintiffs' allegations against Ingenero are indeed much broader than the narrow professional engineering services enumerated in the Policies' professional services exclusions.   Aside from the important fact that Ingenero specializes in process engineering and does not hire chemical engineers or hold itself out to specialize in chemical engineering, it is evident from the "further" modifier, that the list of allegations preceding this paragraph are not limited to Ingenero's professional engineering services.

- Para 189: Allegations that Ingenero failed in their duties concerning: the maintenance of, consultation, advice upon, and operation of the TPC plant; and

- Para 190: Allegations that Ingenero failed in their duties concerning: the maintenance and/or operation and/or consulting and/or advice related to the TPC plant.

36.    Allegations involving Ingenero's work concerning the maintenance and operations of the TPC plant certainly extend beyond the Policies' enumerated excluded

professional services. Although Plaintiffs do not specify what actions Ingenero took or failed to take in connection with the maintenance and operations of the TPC plant, these allegations are not confined to the excluded professional services of preparing or approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, specifications, supervisory, inspection and engineering services.

> **3.   Application of the Eight Corners Rule requires the Insurers to defend Ingenero in the Underlying MDL.**

37.     Plainly, as a result of the broadly stated allegations discussed above in the Underlying MDL, the Insurers must abide by their duty to defend Ingenero under the terms of the Policies.  For example, in *Employers Mut. Cas. Co. v. New Horizon Products, LLC*, the issue involved whether two policy exclusions pertaining to employers' liability and workers' compensation applied to preclude coverage.  In assessing the eight corners rule, Judge Clark stated:

> It is unclear whether Mr. Rosas' injury arose out of and in the course of his employment, or while performing duties related to the New Horizon Defendants' business.  Again, it could theoretically have been either scenario; . . . . Again, it is unknowable based on the policy and the state petition.

> The court is bound to "resolve all doubts regarding the duty to defend in favor of the duty." *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex. 2002).  The court can only conclude that, under the eight corners of the insurance policy and the state court petition, EMC has the duty to defend.

No. 1:09-CV-958, 2010 WL 11530297, *7  (E.D. Tex. Dec. 15, 2010).

38.     Likewise, to the extent the Court finds it is impossible to categorically determine whether the allegations in the Underlying MDL fall outside of the Policies' professional services exclusion, the Court can only conclude that, under the eight corners of the Policies and the Underlying MDL petition, the Insurers have the duty to defend.  *See also Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (holding that any doubt as to

whether an allegation in the Underlying MDL is covered by a defendant's insurance policy, is construed in favor of the insured); *Gore Designs*, 538 F.3d at 373 (holding that because the Statement of Claim does not unequivocally place the blame on the engineering services, the exclusion does not negate the duty to defend.); *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997).

### E.   Ohio Security Breached its Contract with Ingenero by Refusing to Provide Ingenero with a Legal Defense in the Underlying MDL.

39.     In   Texas, insurance policies are contracts subject   to   the   rules   of   contract construction. *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). Under   Texas   law,   the elements of   a breach of contract action are:  "(1)   the   existence   of   a valid contract;   (2)   performance   or   tendered   performance   by   the   plaintiff;   (3) breach of the contract by   the   defendant;   and   (4)   damages   sustained   by   the   plaintiff   as   a   result   of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167 (5th Cir. 2018) (citing *Smith Int'l., Inc. v. Egle Grp., LLC,* 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

40.     In the present case, there is no dispute that the Policies at issue constitute a valid contract between the parties.  Ohio Security has breached its contract with Ingenero by failing to perform its duty to defend Ingenero in the Underlying MDL.  Specifically, Ohio Security has the burden of proof and has failed to prove that the Policies' professional services exclusions apply to preclude coverage under the Insurers' duty to defend.  Ingenero has been damaged by the defense costs incurred in defending the Underlying MDL.  Additionally, Ingenero is entitled to

recover its reasonable and necessary attorneys' fees in pursuing its declaratory judgment and for the Ohio Security's breach of contract.[6]

## IV. CONCLUSION

42. Because an assessment of the broad and all-encompassing allegations against Ingenero in the Underlying MDL reveal complaints involving both Ingenero's professional engineering services and other non-engineering services, the Insurers have a duty to defend Ingenero in the Underlying MDL. Whether the Insurers will have a duty to indemnify in the Underlying MDL is premature and is likely to be determined after the Underlying MDL has concluded.

## V. RELIEF REQUESTED

WHEREFORE, Ingenero respectfully requests the Court to render judgment as follows:

a. A declaration that the policies of insurance attached as Exhibits B and C to Plaintiffs' Original Complaint for Declaratory Judgment provide coverage for the Duty to Defend Ingenero in the Underlying MDL.

b. A declaration that a determination as to whether the policies of insurance attached as Exhibits B and C to Plaintiffs' Original Complaint require a Duty to Indemnify Ingenero in the Underlying MDL is premature and should not be determined until the underlying litigation has concluded.

c. A finding that Plaintiff Ohio Security Insurance Company has breached their duty to defend Ingenero in the underlying litigation and, as a result, Ingenero suffered damages including legal fees and incidental or consequential losses.

d. An award to Ingenero for its reasonable and necessary attorneys' fees and costs of court in defending this suit.

---

[6] Although Ingenero's defense costs—with the exception of a large upfront self-insured retention payment—in the Underlying MDL are currently covered under an errors and omissions policy with Travelers, that defense is also being provided under a reservation rights. In addition, the Travelers policy is an eroding policy and is unnecessarily deteriorating due to the failure of Ohio Security to pay its share of defense costs—as Ohio Security and Travelers were splitting defense costs prior to Ohio Security pulling it coverage and denying Ingenero's claim. Ingenero is faced with the real possibility that all of its insurers, under each policy, will attempt to manufacture a basis to deny coverage in the Underlying MDL.

    e.     An award to Ingenero for incidental and consequential losses caused by Ohio Security Insurance Company's breach of its duty to defend.

    f.     Such other and further relief, both special and general, at law and in equity, to which Ingenero may be entitled.

Respectfully submitted,

*/s/ Thomas M. Gregor*
Thomas M. Gregor
State Bar No. 24032245
Email: tgregor@gcfirm.com
Stacy W. Beasley
State Bar No. 00783618
Email: sbeasley@gcfirm.com

GREGOR │ WYNNE │ ARNEY, PLLC
700 Louisiana, Suite 3950
Houston, Texas 77002
(832) 448-3119
(832) 390-2655 – Fax

**ATTORNEYS FOR DEFENDANT AND COUNTER-PLAINTIFF INGENERO, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel via the court's ECF system on January 10, 2023

*/s/Thomas M. Gregor*
Thomas M. Gregor