IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE | § | |
| COMPANY and THE OHIO CASUALTY | § | |
| INSURANCE COMPANY, | § | |
|     Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 1:22-CV-0177-MJT |
| v. | § | |
| | § | |
| INGENERO, INC., | § | |
|     Defendant. | § | |

**PLAINTIFFS OHIO SECURITY INSURANCE COMPANY AND THE OHIO CASUALTY INSURANCE COMPANY'S RESPONSE TO DEFENDANT INGENERO, INC.'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") file this response to the motion of defendant Ingenero, Inc. ("Ingenero") for summary judgment [Dkt. #13], showing the following reasons why Ingenero fails to uphold its summary judgment burden and its motion should be denied. In addition, plaintiffs fully incorporate into this response the arguments and evidence from their own motion for summary judgment and supporting brief [Dkt. #12].

## I.
### SUMMARY OF RESPONSE

Ingenero applies the wrong standard for both insurance-policy interpretation and a liability insurer's duty to defend and fails to show that any of the harm for which damages are sought in the underlying action is covered by the plaintiffs' respective policies (collectively the "Policies"). Accordingly, Ingenero does not uphold its summary judgment burden and its motion should be denied.

Ingenero improperly relies on extrinsic evidence to argue Ohio Security has a duty to defend it. Ingenero also wrongly urges the Court to interpret unambiguous policy language in

Ingenero's favor, contrary to well-settled law requiring the application of the plain and ordinary meaning of such policy language without deference to Ingenero as the insured.  Moreover, Ingenero mis-reads the exclusionary language at issue, construing it much more narrowly than it plainly states, and thus improperly re-writing it.  Ingenero also argues the general liability policies provide illusory coverage simply because they exclude coverage for professional liability—a risk Ingenero appropriately insures on specific professional liability policies.  In sum, Ingenero's motion is premised on improper policy-construction principles and misapplication of clear policy language, making summary judgment in its favor improper.

## II.
### RESPONSIVE STATEMENT OF UNDISPUTED MATERIAL FACTS

This coverage dispute arises from numerous lawsuits, consolidated into multi-district litigation,[1] seeking damages caused by explosions at a butadiene production plant in Port Neches, Texas.  The plant was operated by TPC Group, Inc. and/or TPC Group, LLC (collectively "TPC"), which hired Ingenero to perform engineering work.  Dkt. #12; Ex. C at APP 295.  Indeed, by its own admission, Ingenero was retained by TPC "to provide it with various data analytic tools and engineering analytics related to the TPC facility."  Dkt. #13 at 3.

Following service of process upon it, Ingenero sought a defense from both its general and professional liability insurers.  *See* Dkt. #12, Ex. E at APP 340; Dkt. #12, Ex. D at APP 344.  The Policies expressly and unambiguously exclude coverage for any bodily injury or property damage caused by the rendering of or failure to render *any professional service*, including (without limitation) Ingenero's engineering work, which is the entire basis of the damages sought from it

---

[1]      The multi-district litigation is consolidated under Cause No. A2020-0236-MDL, styled *In Re: TPC Group Litigation* currently pending in the 128th Judicial District Court of Orange County, Texas (the "Underlying MDL Suit").  The current version of the Master MDL Petition is the fifth amended petition ("MDL Petition").  Dkt. #12, Ex. C at APP 263.

in the Underlying MDL Suit.  *See* Dkt. #12, Ex. A at APP 155; Dkt. #12, Ex. B at APP 246; *see generally* Dkt. #12, Ex. C.

Businessowners Policy issuer Ohio Security initially agreed to defend Ingenero subject to a reservation of rights; once the nature of the factual allegations in the Underlying MDL Suit became clear through amendments to the complaint, however, Ohio Security sent Ingenero a letter disclaiming coverage and discontinuing its participation in the latter's defense.  *See* Dkt. #12, Ex. E at APP 349.  Plaintiffs subsequently filed this action for a declaratory judgment that neither has any duty to defend nor to indemnify Ingenero in the Underlying MDL Suit [Dkt. #1] and, with its answer to the complaint, Ingenero filed a counterclaim for breach of contract.

As explained below and in plaintiffs' motion for summary judgment [Dkt. #12], the harm for which damages are sought from Ingenero arises entirely from its alleged rendering or failure to render professional services and any coverage therefor is thus expressly eliminated by the professional services exclusions in the Policies.  Because the Policies provide no coverage for the claim against Ingenero in the Underlying MDL Suit, the plaintiffs have not breached their respective insurance contracts, and Ingenero's claims fail as a matter of law.

### III.
### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir. 1991).  Here, Ingenero fails to discharge its summary judgment burden because no fact issue exists based on the proper evaluation of the policies and MDL Petition under the "eight-corners" rule, and Ingenero's attempts to introduce extrinsic evidence to create a fact issue fail.

## IV.
### RESPONSIVE STATEMENT OF ISSUES

Ingenero's motion does not contain a separate Statement of Issues. *See* Dkt. #12 at 1-2. To the extent its motion's grounds for summary judgment serve as Ingenero's Statement of Issues, plaintiffs provide the following response:

a.   Ingenero's first ground for summary judgment regarding "Canons of Coverage Analysis" is an incomplete statement of Texas law regarding the duty to defend and policy interpretation. Missing from Ingenero's statement, and from the entirety of its motion, is the well-settled principle that in interpreting unambiguous policy language such as that found in the plaintiffs' respective policies, the Court must apply its plain and ordinary meaning and not the meaning advocated by the insured.

b.   Ingenero's second ground for summary judgment is entitled "Coverage Determination." Plaintiffs disagree with Ingenero's summary of the MDL Petition because Ingenero improperly reads facts into the pleading and/or improperly considers extrinsic evidence to advocate for a duty to defend, both of which are prohibited by Texas law.

## V.
### RESPONSIVE ARGUMENT AND AUTHORITIES

**A.   Ingenero Improperly Relies on Extrinsic Evidence in an Attempt to Establish a Duty to Defend**

Ingenero's motion should be denied because it ignores Texas law setting clear parameters for the evaluation of an insurer's duty to defend. The Court is constrained to apply the "eight-corners" rule in evaluating whether the plaintiffs have a duty to defend Ingenero in the Underlying MDL Suit. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). The "eight-corners" rule directs a court to evaluate the factual allegations in the pleading

against the four corners of the relevant policies.  *See id.*   In doing so, courts focus on the factual allegations in a petition showing the origin of the damages and not on the legal theories alleged. *Am. Auto. Ins. Co. v. Mayfield,* 287 F.Supp.2d 661, 664 (N.D. Tex. 2003) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997)) (internal quotation marks omitted).  Moreover, it is improper for a court to read facts into the petition, look outside of the petition, or imagine factual scenarios that might trigger coverage. *See Gilbane Bldg. Co. v. Admiral Ins. Co*., 664 F.3d 589, 596 (5th Cir. 2011) (citing *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141)).

In interpreting policy language and comparing it to the factual allegations of a petition, a court is required to interpret unambiguous policy language by applying its plain, ordinary, and generally accepted meaning.  *Mid-Continent Cas. Co. v. Swift Energy Co*., 206 F.3d. 487, 491 (5th Cir. 2000) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc*., 907 S.W.2d 517, 520 (Tex. 1995)); *Regency Title Co. v. Westchester Fire Ins. Co*., 5 F.Supp.3d 836, 842-43 (E.D. Tex. 2013) (citing *Evanston Ins. Co. v. Legacy of Life, Inc*., 645 F.3d 739, 744-45 (5th Cir. 2011)) ("Furthermore, if a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their 'plain meaning' even if this means coverage is denied.").  If a petition does not allege facts within the scope of coverage, an insurer is not required to defend the suit against its insured.  *See Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009) (citing *Northfield Ins. Co. v. Loving Home Care, Inc*., 363 F.3d 523, 528 (5th Cir. 2004)).

According to the MDL Petition, TPC hired Ingenero to perform engineering work at TPC's butadiene production plant.  Dkt. #12, Ex. C at APP 295.  As discussed below and by Ingenero's own admission, any coverage for harm caused by Ingenero's negligent performance of its

engineering work is excluded. *See* Dkt. #13 at 5-8. And a review of the MDL Petition makes clear that Ingenero is sued exclusively for its alleged negligence in performing engineering work for TPC and not for any ordinary negligence outside of its engineering work. *Id*.

Nevertheless, Ingenero gamely attempts to argue around the pleaded facts—and thus outside the "eight-corners" rule—by asserting that Ingenero is "a consulting company that provides process engineering services in addition to non-engineering services and analytics," and that "Ingenero specializes in process engineering and does not hire chemical engineers or hold itself out to specialize in chemical engineering." Dkt. #13 at 3, 20. It also refers to its own website to point out that in addition to the engineering services described in the MDL Petition, Ingenero performs project management services and supply chain services. *Id*. Any consideration of evidence that Ingenero advertises services other than the professional services described in the MDL Petition is a gross deviation from the "eight-corners" rule, however, and such evidence cannot be considered in evaluating a duty to defend.

Ingenero also emphasizes ancillary descriptions of its work for TPC as pleaded in the MDL Petition, such as the fact that TPC hired Ingenero to "provide engineering services *and* partner with TPC to oversee butadiene production at the plant." Dkt. #13 at 3 (emphasis by Ingenero); Dkt. #12, Ex. C at APP 326. Ingenero's reliance on this statement is misplaced. The MDL Petition alleges, as Ingenero admits, that Ingenero provided engineering services. Dkt. #13 at 3; Dkt. #12, Ex. C at APP 326-27. Therefore, accompanying descriptions of Ingenero's liability, such as "partnering with TPC" and "failing to use reasonable care in its operations" must be read in the context of the engineering services Ingenero was hired to perform. Ingenero's mischaracterization of the ancillary descriptions of its work thus improperly reads facts into the MDL Petition. *See Gilbane Bldg. Co.,* 664 F.3d at 596 (citing *Merchants Fast Motor Lines, Inc*., 939 S.W.2d at 141)).

In Texas, a "professional service" is one that "must arise out of acts particular to the individual's specialized vocation, [and] ... it must be necessary for the professional to use his specialized knowledge or training." *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 425 (5th Cir. 2010). Texas courts recognize that engineering work involves professional services within the meaning of the exclusions, discussed further below. *Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260 (Tex. App.—Texarkana 2001, no pet.) (an engineering firm engaged in "professional services" when it failed to inspect an excavation area, designed the excavation system and drew up the plans, and misrepresented its qualifications to perform those services); *see also Hartford Cas. Ins. Co. v. DP Engineering, LLC,* 827 F.3d 423 (5th Cir. 2016) (negligent engineering work was a professional service).

The Fifth Circuit Court of Appeals recognizes that where, as here, the underlying lawsuit alleges the insured's failure to perform professional services, the performance of menial tasks inherent to those services also is excluded. *Ford,* 607 F.3d at 425. For example, in *Ford* the insured was hired to create a drilling plan for an oilwell and to consult and assist in the drilling of the well. *Id*. The well had a blowout and the insurer filed a declaratory judgment lawsuit seeking a declaration of coverage under its commercial general liability policy due to the professional services exclusion. *Id.*

In the coverage case, the court properly focused on the crux of the underlying suit and recognized "the complaint is that [the insured] failed to act upon its specialized knowledge that those tasks needed to be performed" and "the allegations are not that [the insured] incorrectly performed some non-professional activity, but that [the insured] failed to properly implement a plan to drill a well." *Id*. at 426. The court found that the insured was tasked with "ensuring that the well did not blow out ... [t]aking, or not taking, certain measures to ensure that the drill pipe

did not fail under the particular drilling conditions [which] requires [the insured's] specialized knowledge and training, and thus is an excluded professional service." *Id.*

The underlying factual allegations against Ingenero are substantially similar:  Ingenero was tasked with providing engineering services at TPC's plant, which would include "ensuring that the [plant] did not blow out."  According to the MDL Petition, Ingenero failed to act on specialized knowledge it was hired to provide, and the explosions occurred.  Like the insured in *Ford*, Ingenero essentially argues that injury caused by an insured's negligent performance of professional services is outside the scope of a professional services exclusion because some of its conduct was arguably non-professional in nature.  In striving to identify this non-professional conduct, Ingenero impermissibly draws on extrinsic evidence from its website, or adds facts to the petition regarding the type of work it performed at the plant.  Ingenero also focuses on ancillary allegations, such as its failure to provide "adequate service, advise, consulting, safeguards, [and] protocols," etc., to suggest that Ingenero performed non-engineering tasks.

The Fifth Circuit rejected this very argument in *Ford* because it renders the exclusion almost meaningless since the implementation of professional services invariably involves menial tasks.  In order to perform the "adequate service, advice, consulting, safeguards, [and] protocols" it contracted to provide to TPC, Ingenero had to exercise its specialized engineering knowledge. Accordingly, all of the ancillary tasks it performed in furtherance of its engineering work are part of Ingenero's professional engineering services.  Properly considering only the factual allegations in the MDL Petition and the Policies makes plain that plaintiffs have no duty to defend Ingenero because the professional services exclusions operate as a complete bar to coverage.[2]

---

[2]    Ohio Casualty issued an umbrella policy.  *See generally* Dkt. #12, Ex. B; Dkt.#12 at 13.  Ohio Casualty also does not owe a duty to defend because all underlying insurance to the Ohio Casualty Policy has not exhausted.  *See* Dkt. #12 at 13-14.

**B.      Ingenero Applies the Wrong Standard for Interpreting the Unambiguous Professional Services Exclusions**

1.      <u>The Professional Services Exclusions Are Unambiguous as a Matter of Law</u>

As discussed above, exclusions in the Policies completely eliminate any coverage for Ingenero's liability described in the MDL Petition.   The Ohio Security Policy contains a professional services exclusion, which states in relevant part:

**B.      Exclusions**

**1.      Applicable to Business Liability Coverage**

This insurance does not apply to ... [:]

**j.      Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.  This includes but is not limited to ... [:]

**(2)**      Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)**      Supervisory, inspection or engineering services ....

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

Dkt. #12, Ex. A at APP 101.

Similarly, the Ohio Casualty Policy also includes a professional services exclusion providing in part as follows:

This insurance does not apply to:

"Bodily injury", "property damage", "personal injury", "advertising injury" or "personal and advertising injury" caused by the rendering of or failure to render any professional service.  This includes but is not limited to ... [:]

    **2.**      Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

    **3.**      Supervisory, inspection or engineering services ....

* * *

    **12**      Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.

This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render any professional service.

Dkt. #12, Ex. B at APP 246.

The Ohio Casualty Policy also includes an Engineers, Architects or Surveyors Professional

Liability Exclusion providing in part as follows:

This insurance does not apply to:

Any liability arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

    **1.**      the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

    **2.**      supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or  failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Dkt. #12, Ex. B at APP 232.

Texas courts have held that substantially similar professional services exclusions unambiguously applied to eliminate any coverage in these circumstances. *See Sitech Eng'g Corp.*, 38 S.W.3d at 264 (no duty to defend where substantially similar professional services exclusion unambiguously applied to insured's engineering work); *CBX Res., LLC v. Ace Am. Ins. Co.*, 282 F.Supp.3d 948, 964 (W.D. Tex. 2017) (applying a similar engineers, architects or surveyors professional services exclusion to eliminate the insurer's duty to defend claims involving negligent design of a well).

> 2.     <u>The Plain, Ordinary and Generally Accepted Meaning of the Exclusions Eliminates Any Coverage for Ingenero</u>

In construing unambiguous policy language, a court must apply its plain, ordinary and generally accepted meaning. *Swift Energy Co.*, 206 F.3d at 491 (citing *CBI Indus., Inc.*, 907 S.W.2d at 520); *Regency Title Co. v. Westchester Fire Ins. Co.*, 5 F.Supp.3d 836, 842-43 (E.D. Tex. 2013). Furthermore, if a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their "plain meaning," even if this means coverage is denied. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 744-45 (5th Cir. 2011).

Ingenero ignores Texas' rules of contract construction by asking the Court to apply the interpretation of the professional services exclusions most favorable to Ingenero as the insured, but this is only allowed when a policy provision is ambiguous. *See Canutillo Indep. Sch. Dist. v. Nat'l Union Free Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996) ("[t]hese special rules favoring the insured ... are applicable only when there is an ambiguity in the policy if the exclusions in question are susceptible to only one reasonable construction, these rules do not apply.").

The MDL Petition alleges that TPC contracted with Ingenero to provide engineering services, which means TPC relied on Ingenero's specific training, qualification, experience and

knowledge in providing those professional services.  Dkt. #12, Ex. C at APP 326.  For example,

the MDL Petition describes the following acts and omissions of Ingenero, which are all tasks

particular to engineering work and cannot be performed by a lay person:

- Ingenero agreed to make its own observations and recommendations concerning the plant's process operations and chemistry.  In its work, Ingenero reviewed daily operator logs, process operations, and process chemistry data.  Dkt. #12, Ex. C at APP 326-27.

- Based upon its review and exercising its engineering judgement, Ingenero reported its daily observations and made recommendations for the operation of TPC's Port Neches plant.  Ingenero continued to provide and charge TPC for engineering services it knew or should have known would be ineffective.  *Id.*

- Ingenero further failed to perform its undertaking as a reasonably prudent chemical engineer and/or vendor would perform services as demonstrated by the aforementioned, and other, failures.  Dkt. #12, Ex. C at APP 328.  Ingenero also failed to provide adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions, thereby further breaching the duties it owed to Plaintiffs and others in the community.  *Id.*

The MDL Petition also describes TPC's alleged reliance upon Ingenero's specialized

knowledge and experience as an engineer and consultant regarding process operations and

chemistry:

- Instead of informing TPC of the active popcorn infection and recommending an immediate shutdown, Ingenero allowed TPC to make decisions based on inaccurate and/or incomplete information.  Ingenero knew, or should have known, TPC was relying on Ingenero to make sure TPC had accurate knowledge regarding its plant's process operations and chemistry.  Dkt. #12, Ex. C at APP 327.

Moreover, Count XI references a Certificate of Merit of Victor Edwards, PE, dated April 22, 2021

and attached to the Petitions "in support of [Underlying Plaintiffs'] claims against INGENERO as

required by Tex. Civ. Prac. & Rem Code §150.002."  Dkt. #12, Ex. C at APP 330-31.  This statute

requires an affidavit or certificate of merit from a qualified professional to accompany a petition

against certain professionals, such as an engineer, in a matter that "arises out of the provision of

professional services by the licensed or registered professional." *See* Tex. Civ. Prac. & Rem. Code §150.002.  Accordingly, the Certificate of Merit confirms that underlying plaintiffs' claims against Ingenero are based entirely on professional negligence in the performance of its engineering work for TPC at the plant.

The professional services exclusions mean what they say: no coverage is afforded for any "bodily injury" or "property damage" caused by the rendering or failure to render any professional service, including professional engineering services.  Dkt. #12, Ex. A at APP 101.  *See Swift Energy Co.,* 206 F.3d at 491 (citing *CBI Indus., Inc.,* 907 S.W.2d at 520 (in construing unambiguous policy language, a court must apply its plain and generally accepted meaning)). Comparing the factual allegations in the MDL Petition describing Ingenero's failure to perform engineering services to the provisions of the Policies readily makes clear under the "eight-corners" rule that the underlying MDL claims are entirely excluded by the professional services exclusions. *Sitech Eng'g Corp.*, 38 S.W.3d at 264 (no duty to defend where substantially similar professional services exclusion unambiguously applied to insured's engineering work); *see also Merchants Fast Motor Lines*, 939 S.W.2d at 141 ("If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.").  Ingenero has failed to establish factual allegations in the petition asserting that it is liable for acts or omissions other than its professional services; thus, Ingenero's motion must be denied.

### C.    Improperly Attempting to Change Their Meaning, Ingenero Ignores Part of the Professional Services Exclusions

Fatal to Ingenero's summary judgment argument is the fact that two of the three exclusions are not limited to engineering services but apply to the rendering or failure to render "*any* professional service."  Dkt. #12, Ex. A at APP 101; Dkt. #12, Ex. B at APP 246 (emphasis added). The Policies list exemplar professional services, including "supervisory, inspection or engineering

services," but state that professional services "include[] but are not limited to" these enumerated services.  *Id*.  Ingenero ignores this critical inexhaustive language to argue in favor of an impermissibly narrow interpretation.

Ingenero contends that because the allegations in the Underlying MDL Suit are not limited to the performance of "process engineering services," the exclusions do not eliminate a duty to defend.  In other words, Ingenero suggests that the exclusions should apply only to professional *engineering* services.  *See* Dkt. #13 at 14.  The plain language of the exclusions, however, provides that engineering services are included as an *example* of a "professional service," and the phrase, "includes but is not limited to" plainly demonstrates that the parties did not intend for engineering services to be the only professional services precluded from coverage.  *See Williamson v. J.C. Penney Life Ins. Co*., 226 F.3d 408, 410 (5th Cir. 2000) ("Furthermore, the word 'including' 'typically indicates a partial list.') (*citing* BLACK'S LAW DICTIONARY 766 (7th ed. 1999)).  Accordingly, allegations involving *any* professional service by Ingenero are equally subject to the exclusion.

Such allegations include the enumerated list of tasks Ingenero culled from the MDL Petition, including Ingenero's failure to provide "adequate service, advice, consulting, safeguards, protocols, communications, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions."  Notwithstanding the fact that inspections and engineering services *are* specifically enumerated professional services within the exclusions, the other tasks, although not enumerated, are incidental to Ingenero's performance of professional services at TPC's plant.  As discussed above and as recognized by the Fifth Circuit in *Ford,* menial tasks performed in conjunction with professional services such as "communications" or providing "personnel" or "equipment" are

inseparable from the professional services themselves, and all are excluded by the catch-all language prohibiting coverage for "any professional service."

Ingenero also relies on *Willbros* and *Gore Designs* to support its mis-reading of the exclusions, but these cases are readily distinguishable and thus inapplicable.  In *Willbros,* a similar professional services exclusion did not foreclose a duty to defend where the petition complained of the insured's negligent construction and operation of pipelines and negligent approval of design plans.  *See Willbros RPI, Inc. v. Cont'l Cas. Co.,* 601 F.3d 306 (5th Cir. 2010).  In contrast, the underlying MDL Petition contains no stand-alone allegations of ordinary negligence and instead alleges that *all* of Ingenero's liability arises from the negligent provision of engineering services.

Like *Willbros*, *Gore Designs* involved a situation where the insured was sued for both professional and ordinary negligence.  *See Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365 (5th Cir. 2008).  Unlike the insured in *Gore Designs,* Ingenero was not responsible for any non-professional activities at the TPC plant.  Because the Underlying MDL Petition constrains its allegations against Ingenero to the professional engineering services it contracted to provide, *Gore Designs* also is distinguishable and does not apply here.

The factual allegations in the MDL Petition succinctly describe that TPC hired Ingenero to provide professional services within the meaning of the exclusions, and therefore, Ingenero's motion should be denied.

## D.    The Coverage Provided by the Policies Is Broad and Not Somehow Illusory.

Ingenero's also argues that the plaintiffs' interpretation of the professional services exclusions "would render the Policies illusory and ineffectual because, under the Insurers' construction of the Policies' exclusions, there is no factual circumstance under which Ingenero could receive bodily injury and property damage coverage under the Polices."  *See* Dkt. #13 at 14. Its argument here also must be rejected as contrary to Texas law.  In Texas, "an insurance policy

is not illusory simply because it does not provide coverage for a claim the policyholder thought it would cover." *Constitution State Ins. Co. v. Iso-Tex, Inc.*, 61 F.3d 405, 410 n. 4 (5th Cir. 1995) ("Texas law does not recognize coverage because of 'reasonable expectation' of the insured."). "[W]hen an insurance policy will provide coverage for other claims, Texas courts are unlikely to deem the policy illusory." *Northfield Ins. Co. v. Herrera*, 751 Fed.Appx. 512, 518 (5th Cir. 2018) (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997)).

Ingenero's contention that the Policies are illusory ignores all other risks that businessowners policies and commercial umbrella policies such as the Policies are designed to cover.  Simply by operating, businesses like Ingenero are exposed to numerous risks, including, for example, premises liability.  The Policies provide coverage for various forms of non-professional liability, a fact known to Ingenero since it purchased separate policies to insure its professional liability.  *See* Dkt. #13 at 23; *see generally* Dkt. #12, Ex. D; Dkt. #12, Ex. F. Therefore, Ingenero's illusory coverage argument completely fails.

## V.
### CONCLUSION

In summary, Ingenero has not met its summary judgment burden because its motion incorrectly applies Texas law regarding policy interpretation and the standard for determining an insurer's duty to defend.  Ingenero's motion also improperly relies on extrinsic evidence and mis-reads the professional services exclusions, which are unambiguous as a matter of law.  All of the factual allegations in the MDL Petition allege that Ingenero was negligent in its performance of engineering services, which Ingenero admits are professional services, and therefore are excluded. As a result, Ohio Security and Ohio Casualty have no duty to defend Ingenero in the Underlying MDL Suit, and having no duty to defend, did not breach their insurance contracts with Ingenero. Accordingly, Ingenero's motion for summary judgment should be DENIED.

WHEREFORE, PREMISES CONSIDERED, Ohio Security and Ohio Casualty respectfully request that this Court deny Ingenero's Motion for Summary Judgment, grant plaintiffs' Motion for Summary Judgment, and award such other and further relief to which they are justly entitled.

Respectfully submitted,

_____

Ellen Van Meir
State Bar No. 00794164
evanmeir@nicolaidesllp.com
Mariah B. Quiroz
State Bar No. 24031714
mquiroz@nicolaidesllp.com

NICOLAIDES FINK THORPE
    MICHAELIDES SULLIVAN, LLP
2501 North Harwood Street, Suite 1210
Dallas, TX 75201
(469) 290-9044
(469) 290-9041 – FAX
**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that on January 31, 2023, a true copy of the foregoing was served via the Court's Notice of Electronic Filing (NEF) upon defendant's counsel of record, Thomas M. Gregor and Stacy W. Beasley, GREGOR │ WYNNE │ ARNEY, PLLC, 700 Louisiana, Suite 3950, Houston, Texas, 77002.

_____

Ellen Van Meir
Mariah B. Quiroz