IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE | § | |
| COMPANY and THE OHIO CASUALTY | § | |
| INSURANCE COMPANY, | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 1:22-CV-0177-MJT |
| v. | § | |
| | § | |
| INGENERO, INC., | § | |
| Defendant. | § | |

## INGENERO'S RESPONSE TO OHIO SECURITY'S AND OHIO CASUALTY'S MOTION FOR SUMMARY JUDGMENT

Defendant and Counter-Plaintiff Ingenero, Inc. ("Ingenero") files this response to Ohio Security Insurance Company's and Ohio Casualty Insurance Company's (together "Insurers") motion for summary judgment. In addition, Ingenero fully incorporates in this response its Motion for Summary Judgment filed on January 10, 2023. *See* Dkt. #13.

### I. GROUNDS FOR DENIAL

- The Insurers' interpretation of the allegations in the Underlying MDL ignores nearly every facet of coverage analysis. Instead of adhering to these longstanding principles of coverage analysis, the Insurers (i) simply ignore the allegations that contradict their position; (ii) cherry-pick words and quote partial sentences of the MDL petition to suit their narrative; and (iii) make the illogical leap that simply because Ingenero provides some engineering services, all acts or omissions complained of in the Underlying MDL must be presumed to be professional engineering services regardless of the actual allegations made by the MDL Plaintiffs.

- Applying appropriate principles of coverage analysis—liberally construing the allegations in the Underlying MDL in favor of coverage and resolving all doubts in favor of Ingenero—it is remarkably clear that the Insurers fail to meet, and are unable to meet, their burden of proof to fully negate any and all *potentially* covered claims based on the allegations stated in the Underlying MDL. Accordingly, the Insurers have a duty to defend Ingenero and the Insurers' motion for summary judgment must be denied.

## II. FACTUAL BACKGROUND

1.     This coverage dispute involves an underlying Multi-District Litigation consolidated in Cause No. A2020-0236-MDL; *In Re: TPC Group Litigation*, in the 128th Judicial District Court of Orange County, Texas (the "Underlying MDL").   The Underlying MDL relates to numerous claims filed after a November 7, 2019 explosion at TPC Group's ("TPC") facility located at 2102 TX-136 Spur, Port Neches, Texas 77561 ("TPC Facility").   Ingenero provided various remote analytic services to TPC and is one of several named defendants in the Underlying MDL.  Plaintiffs in the Underlying MDL ("MDL Plaintiffs") contend that TPC hired Defendant Ingenero to provide engineering services *and* partner with TPC to broadly oversee the butadiene production at TPC's Facility.  *See* Dkt. #13, Ex. A, ¶ 79.

2.     Although the Insurers initially honored their duty to defend Ingenero, they later withdrew coverage and filed this declaratory judgment action on April 29, 2022.  The Insurers' sole basis for denying Ingenero coverage is the Professional Services Exclusion in both the Ohio Security and Ohio Casualty policies, and the nearly identically worded Engineers, Architects or Surveyors Professional Liability exclusion in the Ohio Casualty policy.  *See* Dkt. #12, p. 4, ¶¶ 1-4.[1]

3.     On June 13, 2022, Ingenero filed its Original Answer and Counterclaim, seeking a declaratory judgment that the Insurers in fact have a duty to defend Ingenero in the Underlying MDL, and that Ohio Security breached that duty when it refused to defend Ingenero as required by the policy.[2]  On January 10, 2023, the parties filed cross-motions for summary judgment. *See*

---

[1] The Ohio Security (primary) and Ohio Casualty (excess) policies are collectively referred to herein as the "Policies."

[2] As an excess carrier, Ohio Casualty's duty to defend will not be triggered until primary coverage has been exhausted.  However, both the Ingenero and the Insurers seek a declaratory judgment on this issue.  *See*

Dkt. #12, #13.  The parties agree that this coverage issue is a matter of law to be adjudicated by the Court, that Texas substantive law applies, and the Eight Corners Rule governs the analysis.

4.       As a result, the only disputed issue before the Court is whether the Insurers, as the parties with the burden of proving the application of the Policies' exclusions, have conclusively demonstrated that every claim against Ingenero in the Underlying MDL is precluded by the Professional Services Exclusion (or the nearly identically worded Engineers, Architects or Surveyors Professional Liability Exclusion).  The broad and sweeping allegations made by MDL Plaintiffs make it clear, however, that the claims against Ingenero in the Underlying MDL are not solely limited to professional engineering services.  Accordingly, because allegations in the Underlying MDL broadly assert claims involving both Ingenero's engineering services and non-engineering services, the Insurers have a duty to defend Ingenero in the Underlying MDL as a matter of law and their request for summary judgment must be denied.

### III.  GOVERNING LAW

5.       Notably, the Insurers fail to fully advise the Court of the law governing coverage analysis.  Most likely, the Insurers' omission in this regard is because even a remedial application of these long-standing tenets of coverage analysis, as applied to the facts alleged in the Underlying MDL, mandate denial of the Insurers' summary judgment motion.  Accordingly, it is necessary to set forth the applicable canons of coverage analysis.

### A.       The Insurers have the burden of proof to conclusively establish that every allegation in the Underlying MDL fall within the purported exclusion.

6.       The Insurers, as the parties seeking to apply the Policies' exclusions and avoid coverage, have the burden of proving that each and every allegation in the Underlying MDL falls within the Policies' applicable professional services exclusions. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008); *Weitzman v. Allstate Vehicle & Prop.,*

*Ins. Co*., No. CV H-21-1871, 2022 WL 1078619 (S.D. Tex. Apr. 11, 2022).  (holding that the insurer bears the burden of proving the professional services exclusion applies), quoting *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). *See also Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (noting that in a suit to recover on an insurance contract, the insured bears the initial burden of showing that there is coverage, while the insurer has the burden of proof as to "the applicability of any exclusions in the policy); *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 204 (Tex. 2004) (finding that "[b]ecause Utica's policy treats the professional services exclusion as an exception to coverage, Utica bears the burden of proof to establish that the exclusion applies in this case"). Language of a policy exclusion or exception to coverage that the insurer claims is an avoidance or an affirmative defense.  *See* TEX. INS. CODE § 554.002.

   **B.    The Professional Service Exclusions Contained in the Policies Must be Strictly Construed Against the Insurer.**

   7.    Texas courts do not favor exclusions from coverage and will strictly construe them against the insurer. *Davis–Ruiz Corp. v. Mid–Continent Cas. Co.,* 281 Fed. Appx. 267, 270 (5th Cir.2008) (citing *State Farm Lloyds v. Marchetti,* 962 S.W.2d 58, 61 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)). In construing an exclusionary clause susceptible of more than one reasonable interpretation, "[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *see also Davis-Ruiz Corp.* 281 Fed. Appx. At 270; *Utica Nat'l Ins. Co. v. Am. Indem. Co.,* 141 S.W.3d 198, 202 (Tex. 2004).  In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.  *Hudson Energy*, 811 S.W.2d at 555,

4

(citing *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976).

**C.** **All doubts regarding whether an allegation in the Underlying MDL is covered by the Policies must be construed in favor of Ingenero.**

8.      Any doubt as to whether an allegation in the Underlying MDL is covered by the

Insurers' Policies must be construed in favor of the insured—Ingenero. *Test Masters Educ. Servs.,*

*Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015). According to longstanding case law,

if there is even a *potential* that an allegation in the Underlying MDL falls outside of a policy's

exclusion, the Insurer is required to provide the insured with a defense. *Zurich Am. Ins. Co. v.*

*Nokia, Inc*., 268 S.W.3d 487, 491 (5th Cir. 2008).

9.      According to the Court in *Gore Designs*, "[t]he [eight corners] rule is very favorable

to insureds because doubts are resolved in the insured's favor." The Fifth Circuit went on to state:

> Where the complaint does not state facts sufficient to clearly bring the case within
> or without the coverage, the general rule is that the insurer is obligated to defend if
> there is, potentially, a case under the complaint within the coverage of the policy.
> Stated differently, in case of doubt as to whether or not the allegations of a
> complaint against the insured state a cause of action within the coverage of a
> liability policy sufficient to compel the insurer to defend the action, such doubt will
> be resolved in the insured's favor.

*Gore Designs,* 538 F.3d at 368-369 (citing *National Union Fire Ins. Co. v. Merchants Fast Motor*

*Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997)); *see also King v. Dallas Fire Ins. Co*., 85 S.W.3d

185, 187 (Tex. 2002) ("[W]e resolve all doubts regarding the duty to defend in favor of the duty.").

**D.** **If the allegations in the Underlying MDL <u>potentially</u> include a covered claim, the Insurers are required to defend the entire lawsuit.**

10.     If the Underlying MDL contains multiple allegations or claims in the alternative,

some of which are covered under the policy and some of which are not, the duty to defend arises

if at least one of the claims in the complaint is facially within the policy's coverage. *Great Am.*

*Ins. Co. v. Beyond Gravity Media, Inc.,* 560 F. Supp. 3d 1024 (S.D. Tex. 2021) (citing *Lafarge*

*Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995)), (citing *Rhodes v. Chi. Ins. Co.*,

719 F.2d 116, 119 (5th Cir. 1983)). For example, where the policy excludes coverage for professional services as it does here, if the underlying complaint's alleged injury occurred both because of negligent professional services and negligent services that are incidental or of some other kind, the Insurers must defend the entire lawsuit.  *See Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 312 (5th Cir. 2010). Once coverage has been found for any portion of a suit, an insurer must defend the entire suit. *See Lafarge Corp. v. Hartford Cas. Ins. Co.,* 61 F.3d 389, 393, 395 (5th Cir.1995); *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.,* 917 S.W.2d 29, 56 (Tex. App.—Amarillo 1995), *rev'd in part on other grounds,* 974 S.W.2d 51 (Tex. 1998).

11.     Based on these tenets, and as applied to the allegations in the Underlying MDL, the Insurers must honor their duty to defend under the Policies.  As set forth in detail below, the Insurers' motion for summary judgment must be denied.

## IV. ARGUMENT AND AUTHORITY

12.     As set forth more fully below, in their motion for summary judgment, the Insurers (i) simply ignore allegations in the Underlying MDL that contradict their position; (ii) self-servingly misinterpret MDL allegations to suit their narrative; (iii) incorrectly contend that all allegations in the Underlying MDL exclusively involve professional engineering services on that sole ground that "Ingenero is an 'engineering firm;'" (iv) mistakenly rely on a Certificate of Merit filed "out of an abundance of caution" by MDL Plaintiffs as evidence that allegations against Ingenero solely involve engineering services; and (v) oddly rely on irrelevant extrinsic evidence pertaining to a policy between Ingenero and Travelers Casualty ("Travelers").

### A.     The Insurers Ignore Allegations in the Underlying MDL that Contradict their Position.

13.     In contending the claims against Ingenero in the Underlying MDL *only* involve professional engineering services, the Insurers fail to analyze (or even to address) allegations that

do not reference Ingenero's engineering services. Rather than analyze each individual allegation in the Underlying MDL that falls outside of an express professional engineering service, the Insurers simply ignore them and solely focus on the few MDL claims that specify an engineering service.  *See* Dkt. #12, pp. 3, 6, 7.  Ingenero does not dispute that *some* of the allegations in the Underlying MDL involve its professional engineering services.  The issue in determining the Insurers' duty to defend, however, is whether *all* allegations related to engineering services; which they do not.  Rather, there are multiple allegations that do not relate to professional engineering services, and even more allegations that *potentially* fall outside of a professional engineering service.  The Insurers do not address and, instead, side-step these allegations.

14.    Specifically, the Insurers fail to address or analyze the following Underlying MDL allegations pertaining to Ingenero:

- TPC hired Defendant Ingenero to provide engineering services <u>and</u> partner with TPC to oversee the butadiene production at TPC's Port Neches plant. Ex. A, ¶ 176 (emphasis added).

Here, the Insurers fail to acknowledge that the independent clause following the conjunction "and" involves (or potentially involves) non-engineering services pertaining to overseeing the operation of the TPC plant.

- Ingenero failed in its duties while "conducting its TPC Port Neches plant operations" (*Id*. at ¶ 184).

Similarly, factual allegations pertaining to "plant operations" do not constitute professional engineering services as enumerated under the Policies' exclusions.

- Ingenero failed to provide "adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions." (*Id.* at ¶ 185).

The fact that "engineering services" is only one item in this long list of grievances demonstrates

that the Underlying MDL Plaintiffs do not confine their complaints against Ingenero to those that solely involve excluded professional engineering services.

- Ingenero "breached its duties of ordinary and reasonable care in connection with the maintenance of, consultation, advice upon, and operation of the TPC Port Neches plant." (*Id*. at ¶¶ 189- 190).

Again, services pertaining to plant maintenance and operations do not constitute professional engineering services. *See* Ingenero's Motion for Summary Judgment, Dkt. #13, ¶¶ 28-36, detailing the Underlying MDL's specific allegations against Ingenero that do not involve engineering services.

15.    The Insurers gloss over these specific allegations and hastily conclude that the allegations in the Underlying MDL are "all tasks particular to engineering work and cannot be performed by a lay person."[3]  *See* Dkt. #12, p. 11.  As set forth above, however, under Texas law, any uncertainty or doubt as to whether an allegation in an underlying complaint falls within a policy's coverage, must be resolved in favor of the insured.  *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (holding that any doubt as to whether an allegation in the Underlying MDL is covered by a defendant's insurance policy, is construed in favor of the insured); *Gore Designs*, 538 F.3d at 373 (holding that because the Statement of Claim does not unequivocally place the blame on the engineering services, the exclusion does not negate the duty to defend.); *See also National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997).

---

[3] In a transparent attempt to lower the bar as to what constitutes a professional service, the Insurers' insertion of the phrase "cannot be performed by a lay person."  This, however, is not the standard in assessing the Policies' professional services exclusion that specifically relates to engineering services.

**B.      The Insurers Misinterpret the MDL Petition to Suit their Self-serving Narrative.**

16.      Rather than assess the explicit allegations in the Underlying MDL, the Insurers take the liberty to recast the allegations in their own words and in a self-serving manner that alters the very nature of the allegations in the Underlying MDL.    Specifically, the Insurers state that: "Ingenero's role was as an engineering consultant and diagnostician regarding the plant operation. . . ." *See* Dkt. #12, p. 9. Yet, the Underlying MDL does not make this claim.  The Insurers simply make it up.

17.      Similarly, the Insurers state that: "TPC allegedly relied on Ingenero's specialized training, knowledge and experience as an engineering firm to assist TPC in the operation of its plant, including the prevention of a catastrophic loss like the one made the basis of the Underlying MDL Suit.  Ex. C. at APP 301, 326-27." *See* Dkt. #12, p. 9. Again, nowhere does the MDL Petition state that "TPC relied on Ingenero's specialized training, knowledge and experience as an engineering firm."   The Insurers manufacture the statement based on their own preference as to what they would prefer were the MDL allegations.

18.      The Insurers also state that: "The MDL Petition directly alleges that TPC contracted with Ingenero to provide engineering services, which means TPC relied on Ingenero's specific training, qualification, experience and knowledge in providing those professional services. Ex. C. at APP 326." *See* Dkt. #12, p. 10. This sentence contains two misleading interpretative attributions to the MDL Petition.  First, in the statement, "The MDL Petition directly alleges that TPC contracted with Ingenero to provide engineering services," the Insurers simply leave out the second half of that conjunctive sentence.  The complete sentence states: "TPC hired Ingenero to provide engineering services **and** **partner with them to oversee the butadiene production at the Port Neches plant.**" (Emphasis added). MDL Petition at ¶ 176 (also referenced as Ex. C., APP 326).

9

The Insurers disingenuously leave out the portion of the claim that undercuts their position. Second, the MDL does not allege that "TPC relied on Ingenero's specific training, qualification, experience and knowledge in providing those professional services."  In fact, the MDL Petition does not contain this statement or any similar statement relating to Ingenero.  Again, the Insurers attempt to unilaterally rewrite the allegations in the Underlying MDL.

19.     The Insurers improperly read and attribute claims into the Underlying MDL that are simply not present. *See Nat'l Union Fire Ins. Company of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (In evaluating the underlying pleading to determine whether an insurer has a duty to defend, courts focus on the "petition's factual allegations showing the origin of the damages and not on the legal theories alleged.").  Because the Insurers fail to specifically address all factual allegations in the Underlying MDL, they have failed to meet their burden of proving that the Policies' professional services exclusion precludes coverage.

**C.     The Insurers Incorrectly Contend that the Allegations in the Underlying MDL Must Only Involve Engineering Services on Sole Ground that Ingenero is an "Engineering Firm."**

20.     The Insurers appear to make the illogical leap that allegations against Ingenero in the Underlying MDL exclusively relate to engineering services because Ingenero is an "engineering firm."  *See* Dkt.# 12, pp. 8-9.[4]  Ingenero, however, provides both engineering and non-engineering services.  Nevertheless, the Insurers take the untenable position that, because Ingenero provides some engineering services, the claims in the Underlying MDL must, therefore,

---

[4] Insurers support this contention by citing to their Ex. A, APP 007 and Ex. B, APP 209, in which the Ohio Security Policy makes the following reference:  "Occupancy:  Office: Engineers,"  and the Ohio Casualty Policy states: Insured Is: Corporation; Name Insured Business is: Engineering Consulting Services. The Insurers also cite to a section in the Underlying MDL, as Ex. C., APP 259, in contending that Ingenero is an "engineering firm."  There is no APP 259 in Ex. C, and Ingenero has not been able to find the Insurers' reference in their document labeled "APP 259."

exclusively pertain to engineering services. *See id.*

21.     In fact, Ingenero is a consulting company that provides professional engineering services as well as non-engineering services. Its non-engineering services relate to supply chain management, project management, facility maintenance, and facility operations, among other non-engineering services.[5]

22.     Moreover, this issue is a red herring.  The services that Ingenero in fact provides are irrelevant in determining the Insurers' duty to defend.  Specifically, to determine an Insurers' duty to defend, a court is to consider the factual allegations in the underlying complaint "without regard to their truth or falsity and resolve all doubts regarding the duty to defend in the insured's favor." *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (internal quotations and ellipses omitted). *Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 309 (5th Cir. 2010), *citing Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Texas,* 875 S.W.2d 788, 789 (Tex. App.—Eastland 1994, writ denied)(Under the Eight Corners Rule, the allegations as set forth in the complaint are liberally construed "without reference to their truth or falsity, to what the parties know or believe to be the true facts, or to a legal determination of the true facts.").

23.     The Insurers are required to defend Ingenero if the allegations in the Underlying MDL potentially assert claims that do not involve engineering services.  As is thoroughly addressed in Ingenero's Motion for Summary Judgment [Dkt. #13], fully incorporated herein by reference, it is clear the allegations in the Underlying MDL are not confined to Ingenero's engineering services.  As a result, the Insurers have a duty to defend Ingenero in the entire Underlying MDL. Specifically, Ohio Security has a current duty to defend Ingenero, and Ohio

---

[5] See https://www.ingenero.com/

Casualty will have a duty to defend Ingenero if/when coverage under the primary policies is exhausted.

**D.      The Certificate of Merit in the MDL Petition is <u>Not</u> Evidence that the Underlying MDL Claims Solely involve Ingenero's Professional Engineering Services.**

24.      The Insurers claim that a Certificate of Merit filed in conjunction with the Underlying MDL "supports the plaintiffs' claims that Ingenero engaged in professional negligence in the performance of its engineering work for TPC at the plant." *See* Dkt. #12, p. 12.  Yet, this argument is conclusively dismantled by the Underlying MDL itself.  The Underlying MDL explicitly states that the Certificate of Merit is provided in the *abundance of caution,* without admitting that Ingenero (or the other Defendants) qualify as a "licensed professional":

> Without admitting that NALCO, INGENERO and/or SUEZ qualify as a "licensed or registered professional" requiring such a "certificate of merit," out of an abundance of caution, attached as *Exhibit 1* and *Exhibit 2* dated April 22, 2021 and November 21, 2021 respectively are the "certificates of merit" by a "licensed professional engineer" (Mr. Edwards, along with the engineer's (his) curriculum vitae) . . ..

Underlying MDL at ¶ 198.

25.      This qualifying statement in the Underlying MDL invalidates any argument that the existence of a Certificate of Merit somehow supports the Insurers' claim that the allegations against Ingenero in the Underlying MDL *only* involve Ingenero's professional engineering services.   Rather, Plaintiffs in the Underlying MDL expressly deny any such contention, and; instead, expressly state that the actions complained of may not require a "license" or services of a "registered professional."  The MDL Plaintiffs could hardly be more clear that the alleged actions in the Underling MDL include both professional and non-professional services.

### E.     The Extrinsic Travelers' Policy Does Not Relieve the Insurers of their Duty to Defend.

26.     The Insurers extensively refer to the fact that Travelers Casualty ("Travelers") is providing Ingenero with a defense in the Underlying MDL under a professional services policy. *See* Dkt. #12, pp. 1, 3, 7, 14, 18.  The Traveler's policy, and the coverage Travelers is currently providing in the Underlying MDL, constitutes extrinsic evidence that falls outside the four corners of the Insurers' Policies and outside the four corners of the Underlying MDL Petition. *See Willbros RPI, Inc. v. Cont'l Cas. Co.,* 601 F.3d 306, 309 (5th Cir. 2010) (Under the Eight Corners Rule, a court looks only at the insurance policy itself and the pleadings in the complaint in the underlying suit.).

27.     Nevertheless, Travelers' coverage of Ingenero under its professional services policy has no bearing on the Insurers' duty to defend.  Further, Travelers' coverage does not somehow indicate that the Underlying MDL claims against Ingenero exclusively involve Ingenero's professional engineering services.  Ingenero has consistently asserted that allegations against it in the Underlying MDL involve <u>both</u> its professional engineering services and non-engineering services, requiring both Travelers and Insurers to defend Ingenero in the Underlying MDL.  As is thoroughly addressed in Ingenero's Motion for Summary Judgment and in this Response, if any allegation in the Underlying MDL is *potentially* covered by an insurance policy, the insurer has the duty to defend the entire the lawsuit, regardless of whether other allegations fall outside of the policy's coverage. *Gore Designs,* 538 F.3d at 368-369.  The Insurers' emphasis on Travelers' coverage does not support the Insurers' position and is an odd diversion.  Moreover, it is far from unusual for the claims in a lawsuit to implicate multiple insurance policies that may provide coverage.  *Cont'l Cas. Co. v. N. Am. Capacity Ins. Co*., 683 F.3d 79 (5th Cir. 2012) (addressing three policies implicated by the allegations in the underlying lawsuit); *Am. Econ. Ins.*

*Co. v. Scottsdale Ins. Co.,* No. 1:14-CV-188, 2015 WL 12764955 (S.D. Tex. Oct. 29, 2015) (evaluating split of costs between multiple policies providing coverage based on allegation in the underlying lawsuit).[6]   The coverage that Travelers is currently providing to Ingenero neither vitiates the Insurers' duty to defend nor supports the Insurers' erroneous position that the allegations against Ingenero in the Underlying MDL exclusively pertain to engineering services.

## IV. CONCLUSION

28.    Ingenero has conclusively shown that the Insurers have not met their burden of proof that the allegations against Ingenero in the Underlying MDL *only* involve excluded professional engineering services.   As a result, under Texas law, the Insurers are required to provide Ingenero with a defense in the Underlying MDL.

33.    To the extent there is any doubt or uncertainty as to whether the allegations against Ingenero in the Underlying MDL exclusively involve professional engineering services that are excluded from coverage, the Court can only conclude that, under the eight corners of the Policies and the Underlying MDL Petition, the Insurers have the duty to defend. *Employers Mut. Cas. Co. v. New Horizon Products, LLC*, No. 1:09-CV-958, 2010 WL 11530297, *7  (E.D. Tex. Dec. 15, 2010) (Opinion by J. Clark). *See also Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (holding that any doubt as to whether an allegation in the Underlying MDL is covered by a defendant's insurance policy, is construed in favor of the insured).

---

[6] Further, to the extent the Insurers reference the Travelers policy to imply that Ingenero has sufficient coverage or does not need additional coverage, the assertion is false. Although Ingenero's defense costs—with the exception of a large upfront self-insured retention payment—in the Underlying MDL are currently covered under the Travelers policy, that defense is also being provided under a reservation rights. As the Insurers know all too well, Travelers could reverse course and decline coverage at any given moment.  In addition, the Travelers policy is an eroding policy and is unnecessarily deteriorating due to the failure of Ohio Security to pay its share of defense costs—as Ohio Security and Travelers were splitting defense costs prior to Ohio Security pulling it coverage and denying Ingenero's claim.

WHEREFORE, Ingenero respectfully requests this Court to deny the Insurers' motion for summary judgment and grant Ingenero's motion for summary judgment.  Specifically, Ingenero requests the Court to find that Ohio Security has a current duty to defend Ingenero in the Underlying MDL and that Ohio Casualty's duty to defend will arise if or when primary coverage is exhausted.  Ingenero further requests the Court to find that Ohio Security has breached its duty to defend Ingenero in the underlying litigation and, as a result, Ingenero has suffered damages. Ingenero requests the Court to award Ingenero its reasonable and necessary attorneys' fees and costs of court in defending this suit.

Respectfully submitted,

*/s/ Thomas M. Gregor*
Thomas M. Gregor
State Bar No. 24032245
Email: tgregor@gcfirm.com
Stacy W. Beasley
State Bar No. 00783618
Email: sbeasley@gcfirm.com
GREGOR │ WYNNE │ ARNEY, PLLC
700 Louisiana, Suite 3950
Houston, Texas 77002
(832) 448-3119
(832) 390-2655 – Fax

**ATTORNEYS FOR DEFENDANT AND COUNTER-PLAINTIFF INGENERO, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel via the court's ECF system on January 31, 2023

*/s/Thomas M. Gregor*
Thomas M. Gregor