IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,<br>　　Plaintiffs,<br><br>v.<br><br>INGENERO, INC.,<br>　　Defendant. | §<br>§<br>§<br>§<br>§　CIVIL ACTION NO. 1:22-CV-0177-MJT<br>§<br>§<br>§<br>§<br>§ |

### PLAINTIFFS' REPLY TO DEFENDANT'S SUMMARY JUDGMENT RESPONSE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") file this reply to the response of defendant Ingenero, Inc. ("Ingenero") (Dkt. #13) ("Ingenero's Response") to their motion for summary judgment (Dkt. #12), showing the following additional reasons why that motion should be granted.

### I.  SUMMARY OF REPLY

Despite Ingenero's attempts to complicate this straightforward insurance dispute, the focus of the plaintiffs' summary judgment motion remains the application of professional services exclusions in plaintiffs' policies[1] eliminating *in toto* any coverage for the claim against Ingenero in the underlying multi-district litigation.[2] In strictly applying the "eight-corners" rule as the Court is required to do, and without considering the extrinsic evidence Ingenero proffers (such as its website), the factual allegations in the MDL Petition entirely describe Ingenero's work at the plant

---

[1] Ohio Security issued to Ingenero Businessowners Policy number BZS (20) 58 58 69 10 (the "Ohio Security Policy") and Ohio Casualty issued to Ingenero Commercial Umbrella Policy number USO (20) 58 58 60 10 (the "Ohio Casualty Policy") (collectively referred to as the "Policies").

[2] The multi-district litigation is consolidated under Cause No. A2020-0236-MDL, styled *In Re: TPC Group Litigation,* currently pending in the 128th Judicial District Court of Orange County, Texas (the "Underlying MDL Suit"). The current version of the Master MDL Petition is the fifth amended petition ("MDL Petition"). Dkt. #12, Ex. C at APP 263.

leading to the explosion as involving engineering services and other professional services excluded by the Policies so that the plaintiffs owe no duty to defend. Moreover, the plaintiffs have no duty to indemnify for the same reasons they have no duty to defend, a summary judgment argument Ingenero's Response fails to address.

Instead, Ingenero has responded to the plaintiffs' motion by mis-stating their coverage position and misapplying controlling Texas law on the interpretation of insurance policies and the determination of an insurer's duty to defend. In particular, Ingenero has blatantly ignored allegations in the MDL Petition while simultaneously asking the Court to consider extrinsic evidence in contravention of the "eight-corners" rule. Ingenero thus has failed to sustain its responsive burden, and the plaintiffs are entitled to summary judgment and a judgment declaring that the Policies provide no coverage for the claims against Ingenero in the Underlying MDL Suit.

## II. ADDITIONAL ARGUMENTS AND AUTHORITIES

### A. The "Eight-Corners" Rule, Properly Applied, Does Not Give Rise to a Duty to Defend

Under Texas law, courts must apply the "eight-corners" rule in evaluating a duty to defend. The "eight-corners" rule is simple and well-defined: a Court is constrained to compare only the four-corners of the factual allegations in the underlying pleading against the insured to the four corners of the relevant insurance policy or policies. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). In their motion, plaintiffs demonstrated that they correctly applied the "eight-corners" rule in concluding the professional services exclusions completely bar coverage under the Policies. Ingenero mis-applies and repeatedly ignores the "eight-corners" rule in attempting to create a fact issue, the limitations of which rule are ingrained into Texas jurisprudence and result in no coverage for Ingenero for the claim against it in the Underlying MDL Suit.

1.     The "Four Corners" of the MDL Petition

As for the first "four corners" of the "eight-corners" rule, the MDL Petition describes Ingenero's work at the plant as engineering services provided to TPC in the operation of the latter's butadiene production plant. Ex. C at APP 301. In particular, and "[b]ased upon its review and exercising its engineering judgment, . . . Ingenero reported its daily observations and made recommendations it determined necessary for the safe and efficient operation of the Port Neches plant." Ex. C at APP 301. Specifically, the MDL Petition alleges that "instead of recommending to TPC that the . . . towers be immediately shut[ ]down, cleaned, and passivated, Ingenero continued to provide and charge TPC for engineering services it knew, or should have known, would be ineffective," allegedly causing the explosions. Ex. C at APP 302. The entirety of the MDL Petition claim against Ingenero is that Ingenero's failure to provide these engineering services caused the plant explosions. Dkt. #12, Ex. C at APP 327.

Ingenero's main responsive argument is to emphasize that TPC hired it to provide engineering services "*and partner* with TPC to oversee the butadine production at TPC's plant." Ingenero's alleged "partner[ing]" with TPC is stated only conclusorily in the MDL Complaint, however, and the attempt by Ingenero's Response to add substance to that which is actually stated in the MDL Petition falls outside the scope of the "eight-corners" rule and impermissibly reads facts into the complaint. *Cf.* Dkt. #12, Ex. C at APP 263; *see also Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011) (citing *Merchants Fast Motor Lines, Inc. v. Nat'l Union Fire Ins. Co.,* 939 S.W.2d 139, 141 (Tex. 1997)) (it is improper for a court to read facts into the petition, look outside of the petition, or imagine factual scenarios that might trigger coverage).

The only context for Ingenero's work described in the MDL Petition is its engineering work, and Ingenero fails to provide any other interpretation of what "partnering" with TPC in overseeing butadiene production means. Dkt. #12, Ex. C at APP 326-27. Considering the factual

allegations as a whole (the entire "four-corners" of the MDL Petition), Ingenero's partnering with TPC in overseeing butadiene production necessarily involves the provision of engineering services for which Ingenero was retained. In other words, there is no other context or reason alleged in the MDL Petition to identify or explain the other "non-professional" services Ingenero alleges are at issue.[3]

In evaluating a petition for purposes of determining any duty to defend, a court may not strain the facts beyond a reasonable interpretation or improperly read facts into the pleading. *See Gilbane Bldg. Co.,* 664 F.3d at 596 (citing *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141). Moreover, a court should resolve the duty to defend question in the insured's favor only where the complaint does not state facts sufficient to clearly bring the case within or without coverage. *See Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368-69 (5th Cir. 2008). Here, the complaint does not involve a close call or alleged facts insufficiently describing the insured's liability and, therefore, it is improper simply to defer to Ingenero and find a duty to defend. *See Gilbane Bldg. Co.*, 664 F.3d at 596; *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141; *Gore Design Completions, Ltd.*, 538 F.3d at 372. Instead, the Court is constrained to interpret the facts as they lie and the *only* reasonable interpretation of the factual allegations against Ingenero is that Ingenero is sued for its engineering liability. This is because all of the factual descriptions of Ingenero's work and liability, including any menial tasks inherent thereto, relate back to Ingenero's engineering work. Dkt. #12, Ex. C at APP 301-02.

---

[3] Texas courts observe that a professional service involves specialized knowledge, education or training and is more than an ordinary task. *Atl. Lloyds Ins. Co. v. Susman Godfrey,* 982 S.W.2d 472, 478 (Tex. App.—Dallas 1998, no writ). Ingenero has not articulated how partnering with a plant operator in its production of butadiene does not involve specialized knowledge and can be performed by a layperson. On the contrary, Ingenero's partnering with and work for TPC is entirely in the context of its engineering work described in the MDL Petition, which is an excluded professional service.

Ignoring over three pages of facts describing its engineering liability, Ingenero isolates the following three allegations to suggest that its engineering work was somehow not involved:

- Ingenero failed in its duties while "conducting its TPC Port Neches plant operations." Dkt. #17, p. 7 (citing Dkt. #12, Ex. C at APP 328, ¶184).

- Ingenero failed to provide "adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions." Dkt. #17, p. 7 (citing Dkt. #12, Ex. C at APP 328, ¶185); and

- Ingenero "breached its duties of ordinary and reasonable care in connection with the maintenance of, consultation, advice upon, and operations of the TPC Port Neches plant." Dkt. #17, p. 7 (citing Dkt. #12, Ex. C at APP 238-29, ¶¶189-190).

Ingenero's "operations, service, advice, safeguard, protocols, communication, and duties," as referred to in these three excerpts from the MDL Petition do not stand in a vacuum, however, and necessarily refer to the engineering services TPC hired it to provide. Tellingly, Ingenero fails to explain what operations or service it performed for TPC to support its position that these activities were not engineering work. This is because there are no factual allegations in the MDL Petition suggesting that Ingenero's work at the plant was anything other than engineering work, so that it is impossible for Ingenero (or the Court) to identify any specific non-engineering work that could possibly trigger a duty to defend.

Furthermore, Ingenero's Response also violates the "eight-corners" rule by relying upon its website as extrinsic evidence. Obviously, the content of Ingenero's website its outside the bounds of the "eight-corners" rule and cannot be considered in determining a duty to defend.[4] Dkt. #17, p. 11; *see also Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 204 (Tex.

---

[4] At the same time it improperly advocates for the use of extrinsic evidence, Ingenero wrongly accuses the plaintiffs of relying upon its professional liability policy to deny it coverage under the Policies. Neither plaintiffs' correspondence nor their summary judgment motion asserts, however, that the professional liability policy itself, issued by Travelers, should be considered in determining whether they have a duty to defend. Dkt. #12, Ex. E, Ex. I. Rather, the plaintiffs' coverage evaluation always has been properly limited to the MDL Petition and the Policies, and the Travelers policy has no bearing on this analysis.

2022). Because Ingenero cites no other evidence for its argument, the Court is left with no competent evidence that Ingenero may provide non-engineering services to other customers.

Therefore, in applying the "eight-corners" rule as the Court is required to do, it is evident that the MDL Petition strictly complains of Ingenero's alleged failure in performing the engineering services it was hired to perform for TPC at the plant.[5]

2. The "Four Corners" of Plaintiffs' Policies

As for the second "four corners" of the "eight-corners" rule, the Policies contain substantially similar professional services exclusions stating in part:

> This insurance does not apply to:
>
> > "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to . . . [:]
> >
> > **(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
> >
> > **(3)** Supervisory, inspection or engineering services . . . .
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured . . . involved the rendering or failure to render of any professional service.

Dkt. #12, Ex. A at APP 101. Moreover, the Ohio Casualty Policy includes an additional Engineers, Engineers, Architects or Surveyors Professional Liability Exclusion providing in part:

> This insurance does not apply to:

---

[5] Ingenero also attempts to distract the Court by misconstruing the plaintiffs' statements about the engineering Certificate of Merit attached to the MDL Petition. It supports the plaintiffs' claim that Ingenero engaged in professional negligence in the performance of its engineering work. As Ingenero points out, a plaintiff can attach a Certificate of Merit and allege claims of non-engineering negligence, but that is not the case here in the absence of facts discussing Ingenero's liability outside the context of the professional services it provided to TPC.

> Any liability arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
> 1. the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> 2. supervisory, inspection, architectural or engineering activities.
>
> This exclusion applies even if the "claims" against any "Insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "Insured", if the "occurrence", "offense" or other act, error or omission involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Dkt. #12, Ex. B at APP 232.  Texas courts already have examined these exclusions and found them to be unambiguous and enforceable.  *See Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 264 (Tex. App.—Texarkana 2001, no pet.) (no duty to defend where substantially similar professional services exclusion unambiguously applied to insured's engineering work); *CBX Res., LLC v. Ace Am. Ins. Co.*, 282 F.Supp.3d 948, 964 (W.D. Tex. 2017) (applying a similar engineers, architects or surveyors professional services exclusion to eliminate the insurer's duty to defend claims involving negligent design of a well).

Ingenero concedes that its engineering work is excluded.  Ingenero fails to acknowledge, however, that the entirety of the claim against it in the MDL Petition, including any and all menial and incidental tasks alleged, is excluded because even such tasks relate to either its engineering work or another excluded professional service.  The *Ford* case is instructive here:  In *Ford*, the insured was hired to create a drilling plan for an oilwell and to consult and assist in the drilling of the well.  *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 425 (5th Cir. 2010).  The well had a blowout

and the insurer filed a declaratory judgment lawsuit seeking a declaration of coverage under its commercial general liability policy due to the professional services exclusion. *Id*.

The *Ford* court properly focused on the crux of the underlying suit and recognized "the complaint is that [the insured] failed to act upon its specialized knowledge that those tasks needed to be performed" and "the allegations are not that [the insured] incorrectly performed some non-professional activity, but that [the insured] failed to properly implement a plan to drill a well." *Id*. at 426. The court found that the insured was tasked with "ensuring that the well did not blow out . . . [t]aking, or not taking, certain measures to ensure that the drill pipe did not fail under the particular drilling conditions [which] requires [the insured's] specialized knowledge and training, and thus is an excluded professional service." *Id*.

The underlying factual allegations against Ingenero are substantially similar: Ingenero was tasked with providing engineering services at TPC's plant, which would include "ensuring that the [plant] did not blow out." According to the MDL Petition, Ingenero failed to act on specialized knowledge it was hired to provide, and the explosions occurred. Like the insured in *Ford*, Ingenero essentially argues that injury caused by an insured's negligent performance of professional services is outside the scope of a professional services exclusion because some of its conduct was arguably non-professional in nature. In striving to identify such non-professional conduct, which it never actually does, Ingenero impermissibly draws on extrinsic evidence from its website. It also focuses on ancillary allegations, such as its alleged failure to uphold its "duties" or to provide "adequate service, advise, consulting, safeguards, [and] protocols," to suggest that it performed non-engineering tasks.

Importantly, the Fifth Circuit rejected this very argument in *Ford* because it renders the exclusions almost meaningless since the implementation of professional services invariably

involves menial tasks. In order to perform its duties and the "adequate service, advice, consulting, safeguards, [and] protocols" it contracted to provide to TPC, Ingenero had to exercise its specialized engineering knowledge.[6] Accordingly, all of the ancillary tasks it performed in furtherance of its engineering work are part of Ingenero's professional engineering services.

*Willbros*, cited by Ingenero as support its position, is readily distinguishable and thus inapplicable. In *Willbros,* a professional services exclusion did not foreclose a duty to defend where the petition complained of both the insured's negligent construction/operation of pipelines and the insured's negligent approval of design plans. *See Willbros RPI, Inc. v. Cont'l Cas. Co.,* 601 F.3d 306 (5th Cir. 2010). Here, in contrast, the MDL Petition contains no stand-alone allegations of ordinary negligence—and Ingenero has not identified any. Rather, the MDL Petition alleges that *all* of Ingenero's liability arises from the negligent provision of engineering services. Properly considering only the factual allegations in the MDL Petition and applying the Policies' unambiguous provisions makes plain that the plaintiffs have no duty to defend Ingenero because the professional services exclusions operate as a complete bar to coverage.[7]

### B. Plaintiffs Also Have No Duty to Indemnify

Ingenero fails to respond to the portion of plaintiffs' motion establishing that they have no duty to indemnify it in the Underlying MDL Suit. The duty to indemnify can be resolved solely on the pleadings in the underlying suit where the same reasons eliminating any duty to defend also eliminate a duty to indemnify. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84

---

[6] No layperson can walk into TPC's plant and "partner with TPC to oversee the butadiene production" or provide "adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions" as Ingenero allegedly failed to do. Accordingly, the basis of the underlying plaintiffs' claim against Ingenero *must* involve Ingenero's provision of or failure to provide engineering services. *See Susman Godfrey,* 982 S.W.2d at 478.

[7] Ohio Casualty issued an umbrella policy. *See generally* Dkt. #12, Ex. B; Dkt. #12 at 13. Ohio Casualty also does not owe a duty to defend because all underlying insurance to the Ohio Casualty Policy has not exhausted. *See* Dkt. #12 at 13-14. Ingenero concedes this point. Dkt. #17, p. 2 n.2.

(Tex. 1997); *see also Colony Ins. Co. v. Custom Ag Commodities, LLC,* 272 F.Supp.3d 948, 961 (E.D. Tex. 2017) (finding no duty to defend because of breach of contract policy exclusion and definition of "personal and advertising injury" and applying *Griffin* to find no duty to indemnify); *Simco Enters., Ltd. v. James River Ins. Co.,* 566 F.Supp.2d 555 (E.D. Tex. 2008) (finding no duty to defend because of policy exclusion and applying *Griffin* to find no duty to indemnify).

As discussed above, the professional services exclusions eliminate any duty to defend because Ingenero is sued for its negligent provision of engineering services, which are unquestionably professional services and expressly excluded. *Sitech Eng'g Corp.*, 38 S.W.3d at 264. The professional services exclusions are a complete bar to coverage, meaning that the plaintiffs do not owe Ingenero indemnity for the same reasons they do not owe it a defense in the Underlying MDL suit. Therefore, under *Griffin,* the plaintiffs also have no duty to indemnify Ingenero as a matter of law.

### III. CONCLUSION AND PRAYER

The resolution of this declaratory judgment lawsuit is simple: under the "eight-corners" rule, all of the factual allegations in the MDL Petition describe Ingenero's engineering liability, which Ingenero itself concedes is excluded by the professional services exclusion. Therefore, the plaintiffs are entitled to a judgment declaring that they have no duty to defend or to indemnify Ingenero in the Underlying MDL Suit.

WHEREFORE, PREMISES CONSIDERED, plaintiffs respectfully request that this Court grant their motion for summary judgment.

Respectfully submitted,

*Ellen Van Meir*

Ellen Van Meir
State Bar No. 00794164
evanmeir@nicolaidesllp.com
Mariah B. Quiroz
State Bar No. 24031714
mquiroz@nicolaidesllp.com

NICOLAIDES FINK THORPE
  MICHAELIDES SULLIVAN, LLP
2501 North Harwood Street, Suite 1210
Dallas, TX 75201
(469) 290-9044
(469) 290-9041 – FAX
**COUNSEL FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on February 7, 2023, a true copy of the foregoing was served via the Court's Notice of Electronic Filing (NEF) upon defendant's counsel of record, Thomas M. Gregor and Stacy W. Beasley, GREGOR│WYNNE │ARNEY, PLLC, 700 Louisiana, Suite 3950, Houston, Texas, 77002.

*Ellen Van Meir*

Ellen Van Meir
Mariah B. Quiroz