IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY AND OHIO CASUALTY INSURANCE COMPANY, §§§§§§§§§§§ | |
| *Plaintiffs/Counter-Defendants*, | CIVIL ACTION NO. 1:22-CV-00177 |
| v. | JUDGE MICHAEL J. TRUNCALE |
| INGENERO, INC., | |
| *Defendant/Counter-Plaintiff*. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for summary judgment. [Dkts. 12, 13]. The parties ask the Court to declare whether Plaintiffs/Counter-Defendants, Ohio Security Insurance Company and Ohio Casualty Insurance Company, have a duty to defend Defendant/Counter-Plaintiff, Ingenero, Inc., in a multi-district lawsuit pending in state court. *See In re: TPC Grp. Litig.*, No. A2020-0236-MDL (128th Judicial Dist. Ct., Orange Cnty., Tex.). Ohio Security and Ohio Casualty also ask the Court to declare that they have no duty to indemnify Ingenero in the state court lawsuit. Conversely, Ingenero asks the Court to declare that this issue is not ripe for adjudication. For the reasons discussed below, the Court grants in part and denies in part both motions for summary judgment. [Dkts. 12, 13]. Ohio Security and Ohio Casualty have no duty to defend Ingenero. Whether they have a duty to indemnify Ingenero is not ripe for adjudication.

### I. BACKGROUND

On November 27, 2019, an explosion occurred at the TPC Plant in Port Neches, Texas. According to a lawsuit filed in the 128th District Court in Orange County, Texas, the explosion "not only caused significant property damage to surrounding areas but released unknown substances into the environment." [Dkt. 1-2 at 9]; *see In re: TPC Grp. Litig.*, No. A2020-0236-

MDL. The *In re: TPC Group Litigation* plaintiffs (the "underlying plaintiffs") sued several defendants, including Ingenero. The underlying plaintiffs assert negligence, gross negligence, nuisance, negligent misrepresentation, and failure to warn claims against Ingenero. [Dkt. 1-2 at 50–52, 64–68]. The Fifth Amended Master Consolidated Petition is the live pleading in *In re: TPC Group Litigation*. As to Ingenero's conduct, it alleges:

> During the relevant time, TPC . . . hired Defendant Ingenero to provide engineering services and partner with TPC to oversee the butadiene production at TPC's Port Neches plant. Defendant Ingenero agreed to make its own observations and recommendations concerning the Port Neches plant's process operations and chemistry.
>
> In its work, Defendant Ingenero reviewed daily operator logs, process operations, and process chemistry data. Based upon its review and exercising its engineering judgement, Defendant Ingenero reported its daily observations and made recommendations it determined necessary for the safe and efficient operation of the Port Neches plant. . . . Ingenero knew, or should have known, that the finishing section of TPC's Port Neches facility, including the S4D4 A&B towers, was so badly infected with active popcorn seeds that the only way to ensure the towers could continue to perform safely was to shut them down, clean them out, and passivate them.
>
> But instead of recommending to TPC that the S4D4 A&B towers be immediately shutdown, cleaned, and passivated, Ingenero continued to provide and charge TPC for engineering services it knew, or should have known, would be ineffective. While Ingenero knew, or should have known, that there was an active popcorn polymer infection in TPC's Port Neches plant's butadiene finishing section at that time, Ingenero also knew, or should have known, that TPC did not understand or appreciate this fact. Instead of informing TPC of the active popcorn infection and recommending an immediate shutdown, Ingenero allowed TPC to make decisions based on inaccurate information. Ingenero knew, or should have known, TPC was relying on Ingenero to make sure TPC had accurate knowledge regarding its Port Neches plant's process operations and chemistry.

[Dkt. 1-2 at 39–40]. It further alleges that Ingenero failed to exercise reasonable care while conducting its TPC Plant operations by failing "to vet, train, screen, supervise and/or staff to adequately handle and/or monitor the popcorn polymer and other issues at the Port Neches plant" and by failing to "provide adequate service, advice, consulting, safeguards, protocols, communication, procedures, personnel, equipment, inspections, engineering services, and

resources to prevent and/or mitigate the effects of popcorn polymer and/or uncontrolled explosions." *Id.* at 66.

Ingenero has a Businessowners Policy, number BZS (20) 58 58 69 10, issued by Ohio Security with a policy period of March 1, 2019 to March 1, 2020. It also has a Commercial Umbrella Policy, number USO (20) 58 58 69 10, issued by Ohio Casualty that covers the same policy period. Ingenero tendered its defense of *In re: TPC Group Litigation* to Ohio Security. Ohio Security initially agreed to defend Ingenero, subject to a reservation of rights, but subsequently terminated its defense after deciding that the Professional Services Exclusion bars coverage. The Professional Services Exclusion in the Ohio Security Policy excludes coverage for:

> "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to: . . .
>
> > (2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
> >
> > (3) Supervisory, inspection or engineering services; . . .
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

[Dkt. 12-1 at 101–02]. The Ohio Casualty Policy includes a nearly identical exclusion. *See* [Dkt. 12-2 at 51].

Ohio Security and Ohio Casualty filed this lawsuit seeking declaratory judgment that they do not have a duty to defend or indemnify Ingenero in connection with *In re: TPC Group Litigation*. [Dkt. 1 at 10]. In response, Ingenero filed a counterclaim seeking declaratory judgment that the Professional Services Exclusion does not apply to the *In re: TPC Group Litigation* allegations, that Ohio Security and Ohio Casualty have a duty to defend Ingenero in *In re: TPC*

3

*Group Litigation*, and that a determination of Ohio Security and Ohio Casualty's duty to indemnify is not ripe for adjudication. [Dkt. 5 at 4].

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted); Fed R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. *DIRECTV*, 420 F.3d at 536. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002). There is no genuine issue of material fact if, when the evidence is viewed in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (citations omitted). And although courts consider the evidence in the light most favorable to the nonmoving party, "conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

## III.   DISCUSSION

**A.  Duty to Defend**

Texas law governs this case. To determine whether an insurer has a duty to defend, Texas courts apply the "eight-corners rule." *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015). "Under that rule, courts look to the facts alleged within the four

corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). "The factual allegations are considered without regard to their truth or falsity and all doubts regarding the duty to defend are resolved in the insured's favor." *Id.* When reviewing the pleadings to determine whether the insurer has a duty to defend, "courts look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged." *Id.* "The insured has the initial burden to establish coverage under the policy." *Id.* If the insured meets this burden, the insurer must prove that one of the policy's exclusions applies to avoid liability. *Id.* "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008).

Here, Ingenero's initial burden to establish coverage under the policies is not at issue. Instead, the issue is whether the Professional Services Exclusion found in both policies excludes coverage for the conduct alleged by the underlying plaintiffs. If so, Ohio Security and Ohio Casualty do not have a duty to defend Ingenero in *In re: TPC Group Litigation*.

When a policy does not define "professional service" but rather just provides a non-exhaustive list of professional services, courts applying Texas law do not accept that list as the definition. *Admiral Ins. Co. v Ford*, 607 F.3d 420, 423 (5th Cir. 2010) (citing *Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476–77 (Tex. App.—Dallas 1998, pet.

denied)). [1] Instead, courts adopt a legal definition of "professional service": "The task must arise out of acts particular to the individual's specialized vocation, and it must be necessary for the professional to use his specialized knowledge or training." *Id.* at 425 (citing *Susman Godfrey*, 982 S.W.2d at 476–77) (cleaned up).

Here, the policies do not define "professional service." They simply include a non-exhaustive list of what the term, "professional service," includes. [Dkts. 12-1 at 101–02; 12-2 at 51]. Because there is no policy definition, the Court adopts the legal definition: Ohio Security and Ohio Casualty do not have a duty to defend Ingenero if all the allegations against Ingenero "arise out of acts particular to [Ingenero's] specialized vocation, and it must be necessary for [Ingenero] to use [its] specialized knowledge or training." *See Ford*, 607 F.3d at 425.

In *Ford*, the underlying plaintiff, Exco, hired Ford, the insured, "to create a drilling plan for an oil well and to consult and assist in the drilling of the well." *Id.* at 422. "During drilling, the well had a blowout, and Exco sued Ford." *Id.* In that lawsuit, Exco alleged that Ford breached their contract "by failing to 'properly inspect the drill pipe for casing wear as it was pulled out of the hole,' 'instruct the mud logger to look for and report metal shavings,' and 'use "ditch magnets," a device that detects and segregates metal from the mud.'" *Id.* at 425. The *Ford* court acknowledged

---

[1] In *Susman Godfrey*, the exclusion titled "Designated Professional Services" provided:

**Description of professional services:**

LEGAL SERVICES INCLUDED BUT NOT LIMITED TO COUNSELING, ADVICE, OR ANY OTHER SERVICES REGARDLESS OF WHERE, HOW AND BY WHOM PROVIDED WHICH MAY BE OR ARE PROVIDED OR RENDERED BY LAWYERS, PARALEGALS AND OTHERS WORKING IN A LAW OFFICE AND/OR ADMINISTRATION, MANAGEMENT OR OTHER SERVICES ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE LEGAL SERVICES DESCRIBED HEREIN.

With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

982 S.W.2d at 476.

that "failing to look for metal shavings or to use a magnet to detect shavings in mud" are arguably non-professional acts. *Id.* at 426. But these "menial tasks" did not allow Ford to evade the professional services exclusion. The court explained:

> Exco is not suing Ford because Ford was told to watch for pipe wear and metal shavings and failed to do so. Rather, the complaint is that Ford failed to act upon its specialized knowledge that those tasks needed to be performed (*i.e.,* Ford failed to instruct the mud logger to look for shavings). Indeed, the specific failures are listed as sub-parts of a general failure "to perform adequate and competent drilling operations." In other words, the allegations are not that Ford incorrectly performed some non-professional activity, but that Ford failed to properly implement a plan to drill a well over 16,000 feet deep.

*Id.* at 426. The court elaborated that "the implementation of a drilling plain invariably involves menial tasks," so, the exclusion would be meaningless if it only applied when no non-professional menial tasks occur. *Id.*

Here, the underlying plaintiffs' complaint is that: (1) Ingenero reported its daily observations and made recommendations it determined necessary for the safe and efficient operation of the TPC Plant based on its review *and exercising its engineering judgment* (2) Ingenero knew, or should have known, that there was an active popcorn polymer infection in the TPC Plant's butadiene finishing section and that the only way to ensure the towers could continue to perform safely was to shut them down, clean them out, and passivate them; (3) Ingenero knew, or should have known, that TPC did not understand or appreciate this fact; (4) Ingenero knew, or should have known, that TPC was relying on Ingenero to make sure TPC had accurate knowledge regarding the Plant's process operations and chemistry; and (5) Ingenero did not inform TPC of the active popcorn infection and did not recommend an immediate shutdown. [Dkt. 1-2 at 39–40]. Their complaint is *not* that Ingenero incorrectly performed arguably non-professional tasks such as reviewing daily operator logs or process operations.

In other words, the underlying plaintiffs allege that because TPC relied on Ingenero's specialized knowledge or training, Ingenero caused their injuries by failing to make a specific recommendation (which involved exercising its engineering judgment) to TPC. This allegation "arise[s] out of acts particular to [Ingenero's] specialized vocation," that require Ingenero to "use [its] specialized knowledge or training." *See Ford*, 607 F.3d at 425.

The Court agrees with Ingenero that "TPC . . . hired Defendant Ingenero to provide engineering services *and partner with TPC to oversee the butadiene production* at TPC's Port Neches plant" could mean that TPC hired Ingenero to perform both professional and non-professional services. [Dkt. 1-2 at 39–40] (emphasis added). From this sentence, the Court does not know what "oversee the butadiene production" entails. Likewise, reviewing daily operator logs and process operations could also include non-professional services. But the Court's inquiry must focus on the conduct that the underlying plaintiffs allege *caused* their injuries—not the menial tasks that such conduct involved or other conduct that is not related to the injuries. *See Ford*, 607 F.3d at 426. The plaintiffs allege that TPC relied on Ingenero's specialized knowledge and expertise, and therefore, Ingenero caused their injuries by failing to recommend that TPC immediately shut down the plant. This conduct is excluded from coverage by the Professional Services Exclusion found in both policies.[2] Because the conduct alleged in the operative complaint is excluded, Ohio Security and Ohio Casualty do not have a duty to defend Ingenero.

## B. Duty to Indemnify

Ohio Security and Ohio Casualty contend that if they do not have a duty to defend Ingenero in the underlying suit, then they also do not have a duty to indemnify Ingenero for any liability

---

[2] In addition to the Professional Services Exclusion, the Ohio Casualty policy has a similar exclusion titled Engineers, Architects, or Surveyors Professional Liability Exclusion. [Dkt. 12-2 at 37]. Because the Professional Services Exclusion found in both policies excludes coverage, the Court need not address the Engineers, Architects, or Surveyors Professional Liability Exclusion.

8

that arises from the suit. [Dkt. 12 at 17–18]. The Court disagrees and holds that this issue is not ripe for adjudication.

"An insurer's duty to defend and duty to indemnify are distinct and separate duties." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam). "While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify.'" *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009) (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)). "Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify." *Id.* There is an exception to this general rule though: "[T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Griffin*, 955 S.W.2d at 84. For example, in *Griffin*—which involved a car insurance policy and an underlying suit for a drive-by shooting—the Supreme Court of Texas held: "No facts can be developed in the underlying tort suit that can transform a drive-by shooting into an auto accident. [The insurer] has no duty to defend, and, for the same reasons, has no duty to indemnify [the insured]." *Id.*

But a determination that an insurer has no duty to defend does not necessarily mean that the insurer is also off the hook for the duty to indemnify. *See D.R. Horton-Tex.*, 300 S.W.3d at 744 ("We hold that even if [the insurer] has no duty to defend [the insured], it may still have a duty to indemnify . . . ."). In *D.R. Horton-Texas*, the Supreme Court of Texas explained that its holding in *Griffin* "was grounded on the impossibility that the drive-by shooting in that case could be transformed by proof of any conceivable set of facts into an auto accident covered by the insurance

9

policy." *Id.* at 745. "It was not based on a rationale that if a duty to defend does not arise from the pleadings, no duty to indemnify could arise from proof of the allegations in the petition." *Id.* "These duties are independent, and the existence of one does not necessarily depend on the existence or proof of the other." *Id.*

Ingenero's response to Ohio Security and Ohio Casualty's motion for summary judgment cites its website for the premise that it provides non-engineering services related to supply chain management, project management, facility maintenance, and facility operations." [Dkt. 17 at 11] (citing Ingenero, https://www.ingenero.com/). The Court could not consider this extrinsic evidence when determining the duty to defend. But, unlike in *Griffin*, facts could plausibly develop in the underlying lawsuit that result in Ingenero being held liable for non-professional services. The Court cannot definitively declare that the professional services exclusion negates any possibility that Ohio Security or Ohio Casualty will ever have a duty to indemnify Ingenero in *In re: TPC Group Litigation*. This issue is not ripe for adjudication until Ingenero's liability is determined in the underlying lawsuit.

## IV. CONCLUSION

It is therefore **ORDERED** that Ohio Security Insurance Company and The Ohio Casualty Insurance Company's Motion for Summary Judgment [Dkt. 12] is **GRANTED in PART** and **DENIED in PART**. Ohio Security and Ohio Casualty's claim for declaratory judgment that they have no duty to defend Ingenero, Inc. in *In re: TPC Group Litigation*, No. A2020-0236-MDL (128th Judicial Dist. Ct., Orange Cnty., Tex.) based on the Fifth Amended Master Consolidated Petition is **GRANTED**. Whether Ohio Security and Ohio Casualty have a duty to indemnify Ingenero is not ripe for adjudication.

It is further **ORDERED** that Defendant Ingenero, Inc.'s Motion for Summary Judgment [Dkt. 13] is **GRANTED in PART** and **DENIED in PART**. Ingenero's claim for declaratory judgment that Ohio Security and Ohio Casualty's duty to indemnify is not ripe for adjudication until the underlying litigation has concluded is **GRANTED**. Ohio Security and Ohio Casualty's claim that they have no duty to indemnify Ingenero in *In re: TPC Group Litigation* is **DISMISSED WITHOUT PREJUDICE**. The rest of the relief sought by Ingenero in its Motion for Summary Judgment is **DENIED**.

The Court will enter a Final Judgment in accordance with this Order.

**SIGNED this 13th day of July, 2023.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge